# In the
# United States Court of Appeals
# for the Eighth Circuit

ANDERSON & KOCH FORD, INC.,

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
CASE NO. 0:23-cv-00762
The Honorable Judge Jeffrey M. Bryan

## BRIEF OF PLAINTIFF-APPELLANT
## ANDERSON & KOCH FORD, INC.

Aaron G. Thomas
Jordan L. Weber
Yuka Shiotani
Scott M. Flaherty
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2210
Tel: (612) 977-8400
Fax: (612) 877-8650
athomas@taftlaw.com

*Attorneys for Appellant Anderson & Koch Ford, Inc.*

Appellate Case: 24-1204     Page: 1     Date Filed: 04/16/2024 Entry ID: 5383914

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Appellant Anderson & Koch Ford, Inc. ("Anderson & Koch"), a three-generation Ford dealership, serves North Branch, Minnesota within a locality designated by Respondent Ford Motor Company ("Ford") as Anderson & Koch's area of sales and service responsibility. Ford intends to eliminate half of the census tracts within this Ford-designated "Dealer's Locality" and assign those same tracts to a new dealership to be constructed inside the Dealer's Locality.

Anderson & Koch commenced this action because Ford's proposed change violates the Minnesota Motor Vehicle Sale and Distribution Act by: (1) modifying Anderson & Koch's franchise vis-à-vis another franchise and substantially impairing its sales, service obligations and investments; and (2) changing the Dealer's Locality arbitrarily and without due regard to the current pattern of motor vehicle sales.

This appeal encompasses the November 30, 2023 Order entered by the district court, which granted in part and denied in part Ford's motion to dismiss with respect to Counts I, II, and III of the Complaint. In doing so, the district court erroneously held that: (1) Minn. Stat. § 80E.14 is the exclusive mechanism by which a dealer may challenge the establishment of a new dealership; and (2) the establishment of a new dealership within Anderson & Koch's Dealer's Locality does not constitute a change to the Dealer's Locality or Anderson & Koch's dealer agreement with Ford.

Anderson & Koch respectfully requests 20 minutes for oral argument.

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and this Court's Rule 26.1A, Plaintiff-Appellant Anderson & Koch Ford, Inc. hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

ii

# TABLE OF CONTENTS

**JURISDICTIONAL STATEMENT**.................................................................1

**STATEMENT OF THE ISSUES**.................................................................2

**STATEMENT OF THE CASE**.................................................................3

**I.    FACTUAL BACKGROUND**.................................................................3

    **A.    ANDERSON & KOCH'S LONGSTANDING PARTNERSHIP WITH FORD** ...............................3

    **B.    FORD'S PROPOSED CHANGE TO ANDERSON & KOCH'S DEALER'S LOCALITY** ...............5

    **C.    MINNESOTA'S STATUTORY PROHIBITION AGAINST UNFAIR PRACTICES BY MANUFACTURERS AND DISTRIBUTORS**.................................8

        *1.    Minn. Stat. § 80E.13(k)* ....................................9

        *2.    Minn. Stat. § 80E.13(p)* ...................................10

        *3.    Minn. Stat. § 80E.17* ......................................11

        *4.    Minn. Stat. § 80E.14* ......................................11

    **D.    ANDERSON & KOCH'S COMPLAINT AGAINST FORD**.......12

        *1.    Ford's violations of Minn. Stat. § 80E.13(k) of the MVSDA*....................................13

        *2.    Ford's violations of Minn. Stat. § 80E.13(p) of the MVSDA*....................................14

        *3.    Declaratory judgment under Minn. Stat. § 555.01 et seq.*........16

        *4.    Breach of the covenant of good faith and fair dealing*............17

**II.    PROCEDURAL HISTORY**.................................................................17

**SUMMARY OF THE ARGUMENT** .................................................................19

**ARGUMENT**.................................................................20

**I.    THE STANDARD OF REVIEW** .................................................................20

**II.    THE DISTRICT COURT ERRED IN GRANTING FORD'S MOTION TO DISMISS**.................................................................20

Appellate Case: 24-1204    Page: 4    Date Filed: 04/16/2024 Entry ID: 5383914

**A.** **MINN. STAT. § 80E.14 IS NOT THE EXCLUSIVE MECHANISM BY WHICH A DEALER MAY CHALLENGE A NEW DEALERSHIP**................................**20**

    *1.* *The MVSDA provides independent statutory bases to challenge a manufacturer's actions*..........................................21

    *2.* *The district court's decision impermissibly reads language into the MVSDA that does not exist on its face*........24

    *3.* *Prior decisions interpreting the MVSDA demonstrate that it provides independent remedies* ....................................26

**B.** **ANDERSON & KOCH HAS STATED A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE PROPOSED NEW DEALERSHIP** ...................................................................**31**

    *1.* *The Proposed Change Constitutes a Change to Anderson & Koch's Dealer's Locality under Minn. Stat. § 80E.13(p)*....................................................................... 31

    *2.* *The Proposed Change Constitutes a Change to Anderson & Koch's Franchise under Minn. Stat. § 80E.13(k)*...............34

**CONCLUSION**.......................................................................**36**

Appellate Case: 24-1204     Page: 5     Date Filed: 04/16/2024 Entry ID: 5383914

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Family Ins. Group v. Schroedl*,
  616 N.W.2d 273 (Minn. 2000) ....................................................3, 33

*Burlington N., Santa Fe Ry. Co. v. Lohman*,
  193 F.3d 984 (8th Cir. 1999) .................................................26

*Chrysler Motors Corp. v. Thomas Auto Co.*,
  939 F.2d 538 (8th Cir. 1991) .................................................2

*Daniel v. City of Minneapolis*,
  923 N.W.2d 637 (Minn. 2019) ..............................................3, 25

*Genin v. 1996 Mercury Marquis, VIN No. 2MEBP95F9CX644211,
  License No. MN 225 NSG*,
  622 N.W.2d 114 (Minn. 2001) ..............................................26

*Gershman v. American Cas. Co. of Reading, PA*,
  251 F.3d 1159 (8th Cir. 2001) ..............................................26

*JPMorgan Chase Bank, N.A. v. Johnson*,
  719 F.3d 1010 (8th Cir. 2010) ..............................................26

*Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*,
  118 F.3d 1263 (8th Cir. 1997) ..............................................21

*Minn. Voters Alliance v. Cty. of Ramsey*,
  962 N.W.2d 667 (Minn. App. 2021) ......................................26

*New Motor Vehicle Bd. v. Orrin. W. Fox. Co.*,
  439 U.S. 96 (1978)...........................................................9

*North Star Int'l Trucks, Inc. v. Navistar, Inc.*,
  No. A12-0732, 2013 WL 1392939 (Minn. App. Apr. 8, 2013) .......10, 27, 28, 29

*Schulte v. Conopco, Inc.*,
  997 F.3d 823 (8th Cir. 2021) ..............................................21

v

*Second Richfield Motors, LLC v. Kia Motors Am., Inc.*,
  No. 19-CV-1755, 2020 WL 13538829 (D. Minn. May 20, 2020) ......................9

*Shakopee Chevrolet Inc. v. General Motors LLC*,
  No. CV 20-2366, 2021 WL 1785229 (D. Minn. May 5, 2021)..........3, 29, 30, 31

*State by Beaulieu v. RSJ, Inc.*,
  552 N.W.2d 695 (Minn. 1996) ......................................................3, 33

**Statutes**

28 U.S.C. §§ 1291 and 1294(1) ...................................................2

28 U.S.C. § 1332 .................................................................2

Minn. Stat. § 80E.01 ..........................................................9, 24

Minn. Stat. § 80E.02 ............................................................9

Minn. Stat. § 80E.03 ............................................4, 5, 33, 35, 37

Minn. Stat. § 80E.13(a)–(s) ....................................................25

Minn. Stat. § 80E.13(k).....................................................*passim*

Minn. Stat. § 80E.13(p).....................................................*passim*

Minn. Stat. § 80E.14 .......................................................*passim*

Minn. Stat. § 80E.17 ....................................................12, 23, 27

Minn. Stat. § 176.031.........................................................24

Minn. Stat. § 363A.04.........................................................24

Minn. Stat. § 555.01.......................................................14, 17

Minn. Stat. § 645.08..........................................................33

**Other Authorities**

Fed. R. App. P. 4.............................................................2

Fed. R. App. P. 32(a) ........................................................39

Appellate Case: 24-1204    Page: 7    Date Filed: 04/16/2024 Entry ID: 5383914

Fed. R. Civ. P. 12(b)(6)...........................................................................21

vii

# JURISDICTIONAL STATEMENT

The district court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. (App. 7-11; R. Doc. 1, at 1-5.) Anderson & Koch is a citizen and resident of Minnesota. (App. 9; R. Doc. 1, at 3.) Ford is a corporation organized under the laws of Delaware with its principal place of business in Michigan. (*Id.*)

Upon the parties' stipulation, the district court entered an order for dismissal and judgment on January 30, 2024 and January 31, 2024, respectively. (Add. 10; App. 382; R. Doc. 38; Add. 11; App. 383; R. Doc. 39.) Anderson & Koch filed a notice of appeal on January 31, 2024. (App. 384-387; R. Doc. 40; R. Doc. 40-1.) This appeal is therefore timely pursuant to Fed. R. App. P. 4. This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1) because this appeal is from a final judgment disposing of all claims against all parties.

On March 1, 2024, Ford moved to dismiss this appeal for lack of appellate jurisdiction. On March 8, 2024, Anderson & Koch filed a response, explaining that controlling circuit precedent, *Chrysler Motors Corp. v. Thomas Auto Co*., 939 F.2d 538, 540 (8th Cir. 1991), recognizes that if a district court disposes of some but not all of plaintiff's claims, dismissal of the remaining claims without prejudice creates an appealable final judgment. On March 25, 2024, this Court advised that Ford's motion to dismiss will be taken with the case for consideration by the panel.

Appellate Case: 24-1204    Page: 9    Date Filed: 04/16/2024 Entry ID: 5383914

## STATEMENT OF THE ISSUES

1.    Did the district court err in determining that Minn. Stat. § 80E.14 is the exclusive mechanism by which a dealer may challenge the establishment of a new dealership under the Motor Vehicle Sale and Distribution Act (MVSDA)?

Apposite Authority:

- *Daniel v. City of Minneapolis*, 923 N.W.2d 637, 644 (Minn. 2019)

- *Shakopee Chevrolet Inc. v. General Motors LLC*, No. CV 20-2366 (JRT/LIB), 2021 WL 1785229 (D. Minn. May 5, 2021)

2.    Did the district court err in determining that the establishment of a new dealership within an existing Dealer's Locality (or area of sales effectiveness) does not constitute a change to that Dealer's Locality or the existing dealer's franchise?

Apposite Authority:

- *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000)

- *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996)

2

**STATEMENT OF THE CASE**

## I.    FACTUAL BACKGROUND

### A.    Anderson & Koch's Longstanding Partnership with Ford

Anderson & Koch is a new motor vehicle dealer as defined by Minn. Stat. § 80E.03(3) and operates a Ford franchised motor vehicle dealership, where it sells and services Ford products pursuant to a franchise, as defined by Minn. Stat. § 80E.03(8). (App. 14; R. Doc. 1-1, at 7.) Ford is a manufacturer and distributor, as defined by Minn. Stat. §§ 80E.03(4)-(5), because it manufactures Ford vehicles and sells, and offers to sell, those vehicles to new motor vehicle dealers, including Anderson & Koch, in Minnesota. (*Id.*)

Pursuant to a Ford Sales and Service Agreement ("Dealer Agreement"), Anderson & Koch is authorized to sell and service Ford vehicles. (App. 31-79; R. Doc. 1-1, at 24-72 (Dealer Agreement).) Ford refers to a motor vehicle dealer's assigned geographic area by which it measures the dealer's sales effectiveness as its "Dealer's Locality." (App. 34; R. Doc. 1-1, at 27 § 1(j) ("'DEALER'S LOCALITY' shall mean the locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility for COMPANY PRODUCTS.").) The Dealer's Locality (or "Locality") constitutes the geographical region in which Anderson & Koch is responsible for effectively selling, servicing, and otherwise representing Ford's products. (App. 15; R. Doc. 1-1, at 8.)

3

Notably, the term "Dealer's Locality" in the Dealer Agreement is synonymous with the phrase "Area of Sales Effectiveness" as defined in the relevant statutory scheme. *See* Minn. Stat. § 80E.03, subd. 10b ("'Area of sales effectiveness' means a geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch.").

Anderson & Koch has faithfully and effectively sold, serviced and represented Ford in its Dealer's Locality, consisting of North Branch, Minnesota and the surrounding area, for over 59 years. (App. 15; R. Doc. 1-1, at 8.) For three generations, Anderson & Koch has been family owned and operated. (*Id.*) As a family-owned business, Anderson & Koch has succeeded as a new motor vehicle dealer through hard work, service to community, a dedication to providing a premium experience to its customers and its longstanding partnership with Ford. (*Id.*)

Through its decades-long partnership with Ford, Anderson & Koch has made, and continues to make, the significant investments necessary to meet or exceed its sales and service obligations throughout its Dealer's Locality. (*Id.*) Among other things, Anderson & Koch has incurred significant time, resources and millions of dollars in out-of-pocket costs and expenses to upgrade, enhance and grow its

4

dealership over the past 10 years in reliance upon, and in order to effectively service, its Dealer's Locality. (*Id.* (identifying specific investments undertaken by Anderson & Koch to effectively service its Dealer's Locality).) In October 2022, Anderson & Koch made further investments to become a Ford Model E Certified Elite electric vehicle dealer. (App. 16; R. Doc. 1-1, at 9.) Ford estimates that Anderson & Koch's out-of-pocket costs and expenses for this initiative alone will meet or exceed $1.2 million. (*Id.*)

Because of these substantial investments, made in partnership with Ford and in reliance on its Dealer's Locality, Anderson & Koch has been, and remains, a successful and profitable Ford dealership. (*Id.*)

### B. Ford's Proposed Change to Anderson & Koch's Dealer's Locality

Notwithstanding its longstanding partnership with Anderson & Koch, Ford provided written notice of its intent to substantially change Anderson & Koch's Dealer's Locality by letter dated November 30, 2022 (the "Notice of Proposed Change" or "Proposed Change"). (App. 81-85; R. Doc. 1-1, at 74-78 (Notice of Proposed Change).) Pursuant to Ford's Notice of Proposed Change, Ford intends to unilaterally remove half of the census tracts within Anderson & Koch's current Dealer's Locality for the purpose of assigning those same census tracts to a new franchise that Ford plans to approve or establish at 508 SW 15th Street, Forest Lake MN, 55025 (the "Proposed New Dealership")—a location within the boundaries of

Anderson & Koch's current Dealer's Locality. (App. 87-113; R. Doc. 1-1, at 80-106 (December 7, 2022 memorandum identifying the location of the Proposed New Dealership).)

As reflected in a Ford Dealer's Locality Report dated November 4, 2022 ("Current Locality Report"), Anderson & Koch's current Dealer's Locality contains 18 census tracks comprising the following geographical boundaries:



(App. 115-116; R. Doc. 1-1, at 108-109 (the Current Locality Report, which enumerates the census tracts comprising Anderson & Koch's current Dealer's Locality).)

According to Ford's Notice of Proposed Change, the total census tracts in Anderson & Koch's current Dealer's Locality will be reduced by 50% (from 18 to nine tracts) comprising the following revised geographical boundaries:



(*See* App. 81-85; R. Doc. 1-1, at 74-78 (identifying the proposed post-change census tracts).) According to Ford, this significant reduction in Anderson & Koch's Dealer's Locality "will be implemented 90 days after receiving this [Notice of Proposed Change]." (*Id.*)

By letter dated February 1, 2023, Anderson & Koch objected to Ford's Notice of Proposed Change and advised that Ford's proposal to reallocate half of its census tracts to establish or approve the Proposed New Dealership within Anderson & Koch's current Dealer's Locality violates Minnesota law. (App. 118-122; R. Doc. 1-1, at 111-115 (Anderson & Koch's February 1, 2023 letter to Ford).) Anderson & Koch further requested that Ford rescind its Notice of Proposed Change. (*Id.*) By letter dated February 10, 2023, Ford declined to rescind its Notice of Proposed Change and advised of its "inten[t] to move forward with the Locality change."

(App. 124-125; R. Doc. 1-1, at 117-118 (Ford's February 10, 2023 letter to Anderson & Koch).)

### C. Minnesota's Statutory Prohibition Against Unfair Practices by Manufacturers and Distributors

Minnesota's Motor Vehicle Sale and Distribution Act ("MVSDA") is codified in Chapter 80E of the Minnesota Statutes. The MVSDA provides a comprehensive approach to regulating the sale and distribution of motor vehicles in the state, to prevent fraud and other abuses by automotive manufacturers and to protect the property and investments of Minnesotans. Minn. Stat. § 80E.01. By its terms, the MVSDA applies "to all new motor vehicle dealers and contracts existing between new motor vehicle dealers and manufacturers on May 1, 1981 and to all subsequent contracts between new motor vehicle dealers and manufacturers." Minn. Stat. § 80E.02; *see also Second Richfield Motors, LLC v. Kia Motors Am., Inc*., No. 19-CV-1755 (JNE/TNL), 2020 WL 13538829, at *4 (D. Minn. May 20, 2020).

The MVSDA was specifically enacted to address the uneven bargaining power between automotive manufacturers and their dealers. *See New Motor Vehicle Bd. v. Orrin. W. Fox. Co*., 439 U.S. 96, 100 (1978). According to the U.S. Supreme Court, statutes such as the MVSDA are specifically designed to "protect retail car dealers from perceived abusive and oppressive acts by manufacturers." *Id*.

1.     *Minn. Stat. § 80E.13(k)*

Section 80E.13(k) of the MVSDA makes it unlawful and an unfair practice

for any manufacturer to engage in the following practice:

> (k) threaten to modify or replace or modify or replace a franchise with
> a succeeding franchise that would adversely alter the rights or
> obligations of a new motor vehicle dealer under an existing franchise
> or that substantially impairs the sales or service obligations or
> investments of the motor vehicle dealer.

Minn. Stat. § 80E.13(k).

Applying the plain and unambiguous language of this statutory protection,

Minnesota courts have rejected manufacturers' reliance on their dealer agreements

with new motor vehicle dealers to avoid their statutory obligations to refrain from

substantially impairing the investments or sales or service obligations of their

Minnesota dealers. Consistent with Minn. Stat. § 80E.13(k), Minnesota courts

expressly prohibit manufacturers from taking actions relative to a Dealer's Locality

that will have a detrimental effect on the profitability and value of the dealer. (*See,*

*e.g.,* App. 202-255; R. Doc. 20, at 2-55 (*North Star Int'l Trucks, Inc. v. Navistar,*

*Inc.*, Court File No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan

Burke) (July 22, 2011 Findings of Fact, Conclusions of Law, and Order for

Judgment) (rejecting a manufacturer's reliance on its dealership agreement and

finding, at trial, that removing several ZIP codes from the dealer's area of sales

9

effectiveness substantially impaired the sales or service obligations of the dealer in violation of the MVSDA)).)

   2. *Minn. Stat. § 80E.13(p)*

Section 80E.13(p) of the MVSDA further provides that it is unlawful and an unfair practice for any manufacturer to engage in the following practice:

> (p) assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market. The manufacturer, distributor, or factory branch must provide at least 90 days' notice of the proposed change. The change may not take effect if the dealer commences a civil action within the 90 days' notice period to determine whether the manufacturer, distributor, or factor branch met its obligations under this section. The burden of proof in such an action shall be on the manufacturer or distributor. In determining at an evidentiary hearing whether a manufacturer, distributor, or factory branch has assigned or changed the dealer's area of sales effectiveness or is proposing to assign or change the dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicles sales and registrations within the dealer's market, the court may take into consideration the relevant circumstances, including but not limited to:
>
> > (1) the traffic patterns between consumers and the same line-make franchised dealers of the affected manufacturer, distributor, or factory branch who are located within the market;
> >
> > (2) the pattern of new vehicle sales and registrations of the affected manufacturer, distributor, or factory branch within various portions of the area of sales effectiveness and within the market as a whole;
> >
> > (3) the growth or decline in population, density of population, and new car registrations in the market;
> >
> > (4) the presence or absence of natural geographical obstacles or boundaries, such as rivers;

Appellate Case: 24-1204  Page: 18  Date Filed: 04/16/2024 Entry ID: 5383914

(5)    the proximity of census tracts or other geographic units used by the affected manufacturer, factory branch, distributor, or distributor branch in determining the same line-make dealers' respective areas of sales effectiveness; and

(6)    the reasonableness of the change or proposed change to the dealer's area of sales effectiveness, considering the benefits and harm to the petitioning dealer, other same line-make dealers, and the manufacturer, distributor, or factory branch.

Minn. Stat. § 80E.13(p).

### 3.    *Minn. Stat. § 80E.17*

Independent of the plain language of Minn. Stat. §§ 80E.13(k) and (p), which expressly allows for a civil action, Minn. Stat. § 80E.17 provides a right of action for any dealer that is harmed, or would be harmed, by a manufacturer's violation of any part of the MVSDA, including Section 80E.13(k) and (p). Section 80E.17 states:

Notwithstanding the terms of any franchise agreement or waiver to the contrary, any person whose business or property is injured by a violation of sections 80E.01 to 80E.17, or any person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of section 80E.01 to 80E.17, may bring a civil action to enjoin further violations and to recover the actual damages sustained, together with costs and disbursements, including reasonable attorney's fees.

Minn. Stat. § 80E.17.

### 4.    *Minn. Stat. § 80E.14*

Section 80E.14 of the MVSDA limits manufacturers' ability to establish or relocate a new vehicle dealership if such dealership would be within a ten mile radius of an existing dealership. It provides:

11

> In the event that a manufacturer seeks to enter into a franchise establishing an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented, the manufacturer shall, in writing, first notify each new motor vehicle dealer in this line make in the relevant market area of the intention to establish an additional dealership or to relocate an existing dealership within or into that market area. The relevant market area is a radius of ten miles around an existing dealership.

Minn. Stat. § 80E.14, subd. 1. This provision establishes a 30-day statute of limitations for dealers to challenge the establishment or relocation of a dealership, and it precludes manufacturers from proceeding unless and until the court determines good cause exists for the contemplated action. *Id*. Notably, Section 80E.14 does not provide or even suggest that it is the exclusive mechanism by which dealers may challenge the establishment of a new dealership. *See generally id*.

### D. Anderson & Koch's Complaint Against Ford

On February 28, 2023, in response to the Notice of Proposed Change, Anderson & Koch commenced an action against Ford in the Chisago County District Court, Minnesota.[1] (*See generally* App. 12-125; R. Doc. 1-1, at 5-118.) Anderson & Koch's Complaint alleges that the MVSDA prohibits precisely what Ford purports to do in its Notice of Proposed Change—use otherwise unchecked economic leverage afforded to it under its Dealer Agreement to: (i) substantially impair the

---

[1] On March 29, 2023, Ford removed this action to the United States District Court for the District of Minnesota. (*See* App. 7-11; R. Doc. 1, at 1-5.)

sales or service obligations and investments of Anderson & Koch; and (ii) arbitrarily, or without due regard for the present pattern of motor vehicles sales and registrations, modify its area of sales effectiveness. (App. 21-22; R. Doc. 1-1, at 14-15.) Anderson & Koch asserted four causes of action against Ford: (1) violation of Minn. Stat. § 80E.13(k); (2) violation of Minn. Stat. § 80E.13(p); (3) declaratory judgment under Minn. Stat. § 555.01 *et seq.*; and (4) breach of the covenant of good faith and fair dealing.

### 1. Ford's violations of Minn. Stat. § 80E.13(k) of the MVSDA

Anderson & Koch's Complaint alleges that Ford's Proposed Change modifies the Dealer Agreement and substantially impairs Anderson & Koch's sales and service obligations, along with its significant investments, by substantially affecting the dealership's profitability and value in violation of Minn. Stat. § 80E.13(k). (App. 22; R. Doc. 1-1, at 15.)

Among other things, based on Ford's own methodology for analyzing the impact of the Proposed Change, Anderson & Koch will experience alarming market compression and lose its relative proximity advantage with respect to 42%-57% of the registrations (approximately half) within its current census tracts. (*Id.*) According to Ford's own sales expectancy formula, an average dealership would be expected to lose sales in proportion to the loss of territory in its Dealer's Locality. (*Id.*) Analyzing the Proposed Change in Ford's own terms, the anticipated losses will

13

require Anderson & Koch to double its post-change sales performance (sales relative to sales expectations) to maintain its current sales level. (*Id*.)

Anderson & Koch's bottom-line losses will be significantly larger than its top-line sales loss. (*Id*.) For Anderson & Koch, Ford, or virtually any profit-seeking entity, "fixed" and other overhead expenses cannot simply be reduced in proportion to a top-line sales loss—here, because Ford intends to unilaterally strip and reassign Anderson & Koch's census tracts to another dealership in violation of Minnesota law. (*Id*.) Indeed, in the wake of the Proposed Change, Anderson & Koch anticipates that its net profits will decline by approximately twice the magnitude of any sales loss, thereby creating an immediate existential threat to the viability of its business. (*Id*.)

Accordingly, Anderson & Koch's Complaint alleges that Ford's proposal to reallocate half of the census tracts within Anderson & Koch's Dealer's Locality to a Proposed New Dealership within its current Dealer's Locality violates the express terms of Minn. Stat. § 80E.13(k) and is therefore unlawful. (App. 23; R. Doc. 1-1, at 16.)

### 2. *Ford's violations of Minn. Stat. § 80E.13(p) of the MVSDA*

Independent of the statutory violation described above, Anderson & Koch's Complaint also alleges that the Proposed Change violates Minn. Stat. § 80E.13(p) because it is made without due regard to the current pattern of motor vehicle sales

14

in Minnesota. (*Id.*) As set forth above, Section 80E.13(p) expressly prohibits a manufacturer from "assign[ing] or chang[ing] the dealer's area of sales effectiveness or proposing to assign or change the dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." But that is, again, precisely what Ford purports to do in its Notice of Proposed Change. (*Id.*)

Based on a demographic regression study performed in connection with Anderson & Koch's receipt of the Notice of Proposed Change, Anderson & Koch's market share consistently aligns with the Minnesota state average for new motor vehicle dealers. (*Id.*) In the absence of any meaningful variation in Anderson & Koch's market share as compared to the state average for other new motor vehicle dealers, the Proposed Change is, on its face, objectively arbitrary and made without due regard to the present pattern of motor vehicle sales and registrations within Anderson & Koch's market in violation of Minnesota law. (*Id.*)

Ford's Proposed Change further fails to consider: traffic patterns between customers and the same line-make franchised dealers located within the market; the pattern of new vehicle sales and registrations of Ford within the market as a whole; the growth or decline in population, density of population, and new car registrations within the market; the presence or absence of natural geographical obstacles or boundaries; the proximity of census tracts or other geographic units used to

determine the same line-make dealers' respective areas of sales effectiveness; and, importantly, the reasonableness of the proposed change to Anderson & Koch's area of sales effectiveness, considering the benefits and harm to Anderson & Koch. (*Id.*) Indeed, neither Ford's Notice of Proposed Change nor its subsequent correspondence has addressed any of the relevant statutory requirements and factors under the MVSDA. (App. 24; R. Doc. 1-1, at 17.)

Accordingly, Anderson & Koch's Complaint alleges that Ford's proposal to remove and reallocate half of the census tracts within Anderson & Koch's Dealer's Locality to approve the Proposed New Dealership within Anderson & Koch's current Dealer's Locality separately violates the express terms of Minn. Stat. § 80E.13(p) and is therefore unlawful. (*Id.*)

### 3. Declaratory judgment under Minn. Stat. § 555.01 et seq.

Anderson & Koch's Complaint also alleges a claim for declaratory judgment under Minn. Stat. § 555.01 *et seq.* as it relates to Anderson & Koch and Ford's rights and obligations under the MVSDA and the Dealer Agreement. (App. 26-27; R. Doc. 1-1, at 19-20.) Specifically Anderson & Koch has requested a judgment declaring that:

(i)     Ford is enjoined from proceeding with any of the proposed actions described in the Notice of Proposed Change or otherwise reducing Anderson & Koch's Dealer's Locality;

(ii)     Ford is enjoined from approving or establishing the Proposed New Dealership or any other competing franchise within Anderson &

16

Koch's Dealer's Locality; and

(iii)   Ford is enjoined from providing any new or other franchise with any portion of Anderson & Koch's Dealer's Locality or otherwise reallocating any of the census tracts within Anderson & Koch's Dealer's Locality.

(App. 27; R. Doc. 1-1, at 20.)

4.    *Breach of the covenant of good faith and fair dealing*

Finally, Anderson & Koch's Complaint alleges a claim for breach of the covenant of good faith and fair dealing, which requires that each party to a contract act with honesty in fact and with the observation of commercially reasonable standards of fair dealing in the trade. (App. 27-28; R. Doc. 1-1, at 20-21.) Anderson & Koch contends that the actions of Ford, as detailed above, constitute a violation of the covenant of good faith and fair dealing implied by Minnesota law in the Dealer Agreement. (App. 28; Doc- 1-1, at 21.)

## II.   <u>PROCEDURAL HISTORY</u>

On February 28, 2023, Anderson & Koch commenced this action in the Chisago County District Court, Minnesota. (*See generally* App. 12-125; R. Doc. 1-1, at 5-118.) Ford removed this action to the United States District Court for the District of Minnesota. (*See* App. 7-11; R. Doc. 1, at 1-5.)

On November 30, 2023, the district court entered an order granting in part and denying in part Ford's motion to dismiss with respect to Counts I, II, and III of Anderson & Koch's Complaint "to the extent that those counts seek relief against

the proposed new Ford dealership in Forest Lake, Minnesota." (Add. 9; App. 362; R. Doc. 33, at 9.) The court held that Anderson & Koch failed to plead a viable claim for violation of Minn. Stat. § 80E.13(k) because "Anderson & Koch does not allege that Ford will be modifying a single word of [the Dealer Agreement]." (Add. 5-6; App. 358-359; R. Doc. 33, at 5-6.) The court held that Anderson & Koch failed to plead a viable claim for violation of Minn. Stat. § 80E.13(p) because "Ford's creation of a new dealership in Forest Lake—the target of this lawsuit—is separate from Ford's decision to change Anderson & Koch's Dealer's Locality." (Add. 6; App. 359; R. Doc. 33, at 6.)

The court did, however, determine that Anderson & Koch plausibly challenged Ford's decision to change its Dealer's Locality:[2] "Ford has consistently defined Anderson & Koch's Dealer's Locality in writing, and thus a modification of Anderson & Koch's Dealer Locality can plausibly be deemed to be a modification of its franchise for purposes of § 80E.13(k)." (*Id.*) While the district court found that Anderson & Koch could challenge the change to its Dealer's Locality, the court held that Minn. Stat. § 80E.14 was the exclusive mechanism by which Anderson & Koch could challenge the Proposed New Dealership: "Anderson & Koch cannot use §

---

[2] The court also acknowledged that Anderson & Koch may challenge the change to its Dealer's Locality under § 80E.13(p) and that it had adequately pleaded a claim for breach of the implied covenant of good faith and fair dealing in connection with the change to its Dealer's Locality. (Add. 7; App. 360; R. Doc. 33, at 7.)

Appellate Case: 24-1204    Page: 26    Date Filed: 04/16/2024 Entry ID: 5383914

80E.13(k) or (p) to evade the explicit procedures provided by the Minnesota Legislature for challenging a new dealership." (Add. 8; App. 361; R. Doc. 33, at 8 (referencing Minn. Stat. § 80E.14).)

Following the court's order, on January 26, 2024, the parties entered into a stipulation pursuant to which the parties "agree[d] that the remaining claims and relief asserted by Anderson & Koch in the complaint that were not dismissed by the Court's Order are dismissed without prejudice." (App. 379-380; R. Doc. 36, at 1-2.) The district court entered an order for dismissal and judgment on January 30, 2024 and January 31, 2024, respectively. (Add. 10; App. 382; R. Doc. 38; Add. 11; App. 383; R. Doc. 39.) Anderson & Koch filed a notice of appeal on January 31, 2024. (App. 384-387; R. Doc. 40; R. Doc. 40-1.)

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's November 30, 2023 Order because (1) Minn. Stat. § 80E.14 is not the exclusive mechanism by which a dealer may challenge the establishment of a new dealership under the MVSDA and (2) the establishment of a new dealership within Anderson & Koch's existing Dealer's Locality constitutes both a change to the Dealer's Locality under Minn. Stat. § 80E.13(p) and a change to its franchise under Minn. Stat. § 80E.13(k).

19

# ARGUMENT

## I.    THE STANDARD OF REVIEW

This Court reviews *de novo* district court decisions granting a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting as true all factual allegations and viewing them in the light most favorable to the nonmoving party. *Schulte v. Conopco, Inc*., 997 F.3d 823, 825 (8th Cir. 2021) (citing *Glick v. W. Power Sports, Inc*., 944 F.3d 714, 717 (8th Cir. 2019)). Similarly, a district court's interpretation of state law is reviewed *de novo*. *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co*., 118 F.3d 1263, 1267 (8th Cir. 1997). Where a state supreme court has not yet spoken on an issue, "we must attempt to predict what that court would decide if it were to address the issue." *Id*. at 1268. In so doing, this Court can consider relevant precedent, analogous decisions, considered dicta, and any other reliable data. *Id*. (citing *Ventura v. Titan Sports, Inc*., 65 F.3d 725, 729 (8th Cir. 1995)).

## II.    THE DISTRICT COURT ERRED IN GRANTING FORD'S MOTION TO DISMISS

### A.    Minn. Stat. § 80E.14 Is Not the Exclusive Mechanism by Which a Dealer May Challenge a New Dealership

This Court should reverse the district court's November 30, 2023 Order because Minn. Stat. § 80E.14 is not the exclusive mechanism by which a dealer may challenge the establishment of a new dealership under the MVSDA. As described below, the MVSDA provides multiple independent statutory bases to challenge a

20

manufacturer's actions. None of those bases are exclusive, as past decisions interpreting the MVSDA have recognized. To hold otherwise, this Court would need to read language into the MVSDA that does not exist on its face.

      1.    *The MVSDA provides independent statutory bases to challenge a manufacturer's actions*

The district court determined that Section 80E.14 "sets forth the procedure that an existing dealer ***must use*** when challenging a manufacturer's decision to establish a new dealership within the existing dealer's 'relevant market area.'" (Add. 4; App. 357; R. Doc. 33, at 4 (emphasis added).) According to the district court, "Anderson & Koch cannot use § 80E.13(k) or (p) to evade the explicit procedures provided by the Minnesota Legislature [in Section 80E.14] for challenging a new dealership." (Add. 8; App. 361; R. Doc. 33, at 8.) In doing so, the district court incorrectly determined that Minn. Stat. § 80E.14 was the exclusive mechanism by which a dealer (like Anderson & Koch) may challenge the establishment of a new dealership (like the Proposed New Dealership). (*Cf.* App. 132; R. Doc. 15 at 7 (Ford's Mot. to Dismiss) (describing Section 80E.14 as the "sole avenue" for challenging the establishment of a new dealership).) There is no support for the district court's interpretation.

The Minnesota legislature, in enacting the MVSDA, prohibited multiple actions by automotive manufacturers as being unlawful and unfair practices. The MVSDA prohibits dealers from "modify[ing] … a franchise with a succeeding

21

franchise that would adversely alter the rights or obligations of a new motor vehicle dealer under an existing franchise or that substantially impairs the sales or service obligations or investments of the motor vehicle dealer." Minn. Stat. § 80E.13(k). It also prohibits dealers from "assign[ing] or chang[ing] a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market."[3] Minn. Stat. § 80E.13(p). And, independently, it provides limitations on dealers from establishing or relocating "an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented."[4] Minn. Stat. § 80E.14. The MVSDA expressly provides a right of action for any dealer that is harmed, or would be harmed, by a manufacturer's violation of any provision of the MVSDA, including Section 80E.13(k) and (p). *See* Minn. Stat. § 80E.17.

The district court incorrectly assumed that, because Section 80E.14 creates a right to challenge the establishment of a new dealership within a 10-mile radius, it necessarily precludes the right to challenge the establishment of a more-distant dealership under another provision of the MVSDA. But the fact that the legislature prohibited manufacturers from taking various actions through independent statutory

---

[3] Minn. Stat. § 80E.13(p) effectively provides a 90-day statute of limitations.
[4] Minn. Stat. § 80E.14 effectively provides a 30-day statute of limitations.

Appellate Case: 24-1204    Page: 30    Date Filed: 04/16/2024 Entry ID: 5383914

provisions reflects the reality that a manufacturer might seek to unlawfully or unfairly use its unchecked economic leverage to the detriment of a local dealer through a variety of means. *See generally* Minn. Stat. § 80E.01. The establishment of a new dealership within a tight geographic proximity is merely one type of action that the legislature deemed unlawful and unfair. But there is ***nothing*** in the text of the MVSDA that provides, or even suggests, that the existence of statutory redress under one provision, such as Minn. Stat. § 80E.14, renders that provision the exclusive remedy for a dealer or somehow prohibits a dealer from pursuing remedies for other violations under the MVSDA.[5] *See generally* Minn. Stat. § 80E.14.

Had the Minnesota legislature intended Section 80E.14 to provide an exclusive remedy, it would have expressly articulated that intent. *See, e.g.,* Minn. Stat. § 176.031 (codifying exclusivity provision in the workers' compensation act); Minn. Stat. § 363A.04 (codifying exclusivity provision in the human rights act). In the absence of language of exclusivity, the MVSDA's various remedies cannot be deemed to be exclusive: "'unless a statute provides that its remedy is exclusive,' a party may bring claims that arise out of the same set of facts under different statutes."

---

[5] It bears reminding that the purpose of the MVSDA is to protect *dealers* and their investments. A contrary reading would allow manufacturers to circumvent protections by, for example, placing a new dealership just beyond the 10-mile radius regardless of the impact on the existing dealership and regardless of whether the action violated another provision of the MVSDA. *See* Minn. Stat. § 80E.01.

Appellate Case: 24-1204     Page: 31     Date Filed: 04/16/2024 Entry ID: 5383914

*Daniel v. City of Minneapolis*, 923 N.W.2d 637, 644 (Minn. 2019) (quoting *Abraham v. Cty. of Hennepin*, 639 N.W.2d 342, 346–47 (Minn. 2002)).

Nor is there any support for the district court's suggestion that permitting a challenge to a new dealership through Section 80E.13(p) or (k) would somehow create a conflict with Section 80E.14 (or result in a "bizarre" outcome). (*See* Add. 8; App. 361; R. Doc. 33, at 8; *see also* Add. 5; App. 358; R. Doc. 33, at 5) ("Anderson & Koch is essentially trying to do an end run around § 80E.14's restrictions. . .").)[6] In enacting the MVSDA, the Minnesota legislature contemplated many ways in which manufacturers could engage in unfair practices relative to dealers, all of which it prohibited or circumscribed. *See* Minn. Stat. § 80E.13(a)–(s). Establishing a new dealership within a certain geographic proximity was just one of many concerns addressed through the enactment of the MVSDA.

> ### 2. The district court's decision impermissibly reads language into the MVSDA that does not exist on its face

As noted, there is nothing in the text of the MVSDA that provides, or even suggests, that Minn. Stat. § 80E.14 is the exclusive procedure for challenging an action by a manufacturer that involves the establishment of a new dealership. To affirm the district court's decision, this Court would effectively need to read

---

[6] Frankly, it is unclear how allowing Anderson & Koch to proceed under a provision of the MVSDA which provides a 90-day statute of limitations rather than a provision that provides a 30-day statute of limitations would result in a "bizarre" outcome.

Appellate Case: 24-1204     Page: 32     Date Filed: 04/16/2024 Entry ID: 5383914

language into the MVSDA that does not exist on the face of the statute. Such an interpretation is prohibited under basic canons of statutory construction.

"The rules of statutory construction dictate that words should not be supplied to a statute when the words are purposefully omitted or when adding words would defeat the purpose of the statute." *Burlington N., Santa Fe Ry. Co. v. Lohman*, 193 F.3d 984, 985 (8th Cir. 1999). Courts "will not add 'words or meaning to a statute that are purposely omitted or inadvertently overlooked.'"[7] *Minn. Voters Alliance v. Cty. of Ramsey*, 962 N.W.2d 667, 675 (Minn. App. 2021) (quoting *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010)); *see also Genin v. 1996 Mercury Marquis, VIN No. 2MEBP95F9CX644211, License No. MN 225 NSG*, 622 N.W.2d 114, 119 (Minn. 2001) ("For us to interpret the provision as [the city and the lower courts] did would be to add words to the statute, and the rules governing statutory construction forbid that.").

Contrary to these statutory construction canons, the district court's decision reads into Minn. Stat. § 80E.14 that it is the "exclusive remedy for any challenge involving the establishment of a new franchise or dealership." That language plainly

---

[7] In construing a state statute, federal courts are bound by the state's rules of statutory construction. *See Gershman v. American Cas. Co. of Reading, PA*, 251 F.3d 1159, 1162 (8th Cir. 2001) (finding that the court was bound by Missouri's rules of statutory construction in construing Missouri statute); *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2010) (relying on Arkansas's rules of statutory construction in analyzing Arkansas statute).

Appellate Case: 24-1204    Page: 33    Date Filed: 04/16/2024 Entry ID: 5383914

does not exist in the text of the statute. Likewise, the district court's decision reads into Minn. Stat. § 80E.13(k), Minn. Stat. § 80E.13(p), **and** Minn. Stat. § 80E.17 that "the prescribed remedies herein only apply to proposals and arrangements that do not involve the establishment of a new franchise or dealership." That language similarly does not exist in the text of the statute. Because the MVSDA does not include such language, by law, this Court cannot read such language into the statute to support the district court's erroneous conclusion that Minn. Stat § 80E.14 serves as the exclusive mechanism for challenging the establishment of a new franchise.

### 3. *Prior decisions interpreting the MVSDA demonstrate that it provides independent remedies*

The conclusion that Minn. Stat. § 80E.13(k) and (p) provide independent remedies—notwithstanding the existence of Minn. Stat. § 80E.14—is supported by prior decisions that have interpreted the MVSDA.

In *North Star Int'l Trucks, Inc. v. Navistar, Inc*., No. A12-0732, 2013 WL 1392939 (Minn. App. Apr. 8, 2013), for example, plaintiffs were franchised dealers of the International line-make of trucks manufactured by defendant Navistar, Inc. *Id*. at *1. Plaintiffs' area of responsibility (or dealer's locality) comprised most of the Twins Cities area. *Id*. On January 7, 2009, Navistar sent a letter to plaintiffs announcing its intent to remove 51 zip codes from their locality and subsequently informed plaintiffs, much like the situation here, that those areas had been reassigned to a new dealer, defendant Boyer Ford Trucks, Inc. *Id*. at *2. The dealers sued

26

Navistar for, among other claims, (1) a violation of Section 80E.13(k) for stripping the zip codes from plaintiffs' locality and re-assigning that territory to the new dealer, *id*. at *3, and (2) a violation of Section 80E.14 for establishing new dealerships within a mile of one of plaintiffs' locations, *id*. at *2.[8]

Even though the proposed change included the establishment of a new dealership, which implicates Section 80E.14, the court denied Navistar's motion to dismiss the Section 80E.13(k) claim. (App. 264; R. Doc. 20-2, at 9 (*North Star Int'l Trucks, Inc. v. Navistar, Inc*., Court File No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan Burke) (June 30, 2010 Motion to Dismiss Order) ("Based on North Star's allegations that Navistar has stripped fifty-one zip codes from North Star's area of responsibility and assigned them to Boyer Ford, the Court concludes that North Star has stated a claim for a violation of Section 80E.13(k).")).) Both the Section 80E.13(k) and Section 80E.14 claims survived summary judgment and were tried to a jury.[9] (*See* App. 296-297; R. Doc. 20-3, at 10-11 (Sept. 29, 2010 Summary Judgment Order) (finding that there was a genuine issue of material fact as to whether Navistar improperly modified plaintiffs' dealership agreement in violation

---

[8] Plaintiffs argued that the new dealer was selling the same line-make in four different locations—three of which were within the 10-mile radius.

[9] The jury found that "Navistar modified North Star's franchise by removing the 51 zip codes, and that the removal 'substantially impair[ed] the sales or service obligations or investments of North Star'" in violation of section 80E.13(k). 2013 WL 1392939, *4. The jury ultimately determined that North Star's claim was barred by waiver based on inaction that is not present in this case. *Id*.

of Section 80E.13(k) by stripping zip codes from plaintiffs' area of responsibility and re-assigning them to new dealer); *see* App. 313-316; R. Doc. 20-3, at 26-29 (finding that a reasonable jury could find that Navistar established International dealerships within plaintiffs' locality under Section 80E.14).)

*Navistar, Inc.* confirms that the MVSDA contains independent prohibitions, the violations of which can be independently alleged regardless of the applicability of another provision. The dealer in that action successfully challenged the removal of its territory and re-assignment to a new dealer under Section 80E.13(k) notwithstanding the existence of Section 80E.14—demonstrating that the latter provision does not constitute the exclusive procedure for challenging an action that involves the establishment of a new dealership. The district court failed to consider or address this decision in its November 30, 2023 Order.

*Shakopee Chevrolet Inc. v. General Motors LLC*, No. CV 20-2366 (JRT/LIB), 2021 WL 1785229 (D. Minn. May 5, 2021) is also instructive. There, Defendant General Motors LLC ("GM") informed a motor vehicle dealer that it intended to expand the dealer's area of sales effectiveness from 7 to 13 census tracts. *Id*. at *2. The dealer sued GM alleging three violations of the MVDSA, including Sections 80E.13(p) and (k). *Id*. As it relates to Section 80E.13(k), the dealer argued that the "modification would have materially impacted its operations and performance expectations such that it modified, or threatened to modify the agreement that fixed

28

the existing legal rights and liabilities of the parties." *Id*. at *3. GM argued that the Section 80E.13(k) claim should be dismissed because "§ 80E.13(p) exclusively governs changes to areas of sales effectiveness." *Id.* at *4. GM further argued that "applying § 80E.13(k) as [dealer] does would render [§ 80E.13(p)] nugatory and surplusage because if areas of sales effectiveness could be challenged under (k), then (p), as amended, would not need to exist." *Id*.

The United States District Court for the District of Minnesota, Judge Tunheim presiding, rejected GM's argument, explaining that "Minnesota courts have applied § 80E.13(k), rather than § 80E.13(p), to modifications of sales territory when the modifications were significant enough to substantially impair the sales or service obligations or investments of a dealership." *Id*. (citing *Navistar, Inc*., 2013 WL 1392939, at *4). The court held that "the existence of § 80E.13(p) does not bar claims under § 80E.13(k) when the [sales territory] modification is substantial enough to threaten the franchise's existing rights and liabilities." *Id*. The court denied GM's motion to dismiss the Section 80E.13(k) claim because the increase in the dealer's locality by approximately 66% "present[ed] a plausible allegation that the proposed [change] modified, or threatened to modify, [dealer's] operations such

that it altered the rights, obligations, and liabilities of the franchise itself."[10] *Id*. at *4.

In *Shakopee Chevrolet Inc.*, the court allowed the dealer to pursue claims under both Sections 80E.13(p) and (k), despite the fact that the proposed change was a modification to the dealer's locality, which conduct is specifically addressed in Section 80E.13(p), because the change also independently constituted a violation of Section 80E.13(k). In doing so, the court recognized that each of the provisions within the MVSDA are independent prohibitions against unfair conduct by manufacturers and that the application of one provision is not exclusive over the application of another relevant provision. Unfair conduct that violates the statute is redressable, even if that conduct occurs more than 10 miles from an existing dealer. The district court likewise failed to consider or address this decision in its November 30, 2023 Order.

---

[10] The court also denied GM's motion to dismiss the Section 80E.13(p) claim: "Because Shakopee Chevrolet has sufficiently alleged that GM made this 2020 [sales territory] modification 'arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market[,]' *id*. § 80E.13(p) (2018), and attempted to impose this change despite the dealer's commencement of a civil action within 90 days of receiving the 2020 APR Notice, the Court finds that Shakopee Chevrolet has met its burden of stating a plausible claim as to Count III." 2021 WL 1785229, at *5.

30

**B.** **Anderson & Koch Has Stated a Plausible Claim for Relief Against the Proposed New Dealership**

This Court should reverse the district court's November 30, 2023 Order because Anderson & Koch has stated a claim for relief against the Proposed New Dealership. The establishment of the Proposed New Dealership within Anderson & Koch's existing Dealer's Locality constitutes a change to the Dealer's Locality under Minn. Stat. § 80E.13(p) and a change to its franchise under Minn. Stat. § 80E.13(k).

        *1.*     *The Proposed Change Constitutes a Change to Anderson & Koch's Dealer's Locality under Minn. Stat. § 80E.13(p)*

The district court's decision assumes that the establishment of a new dealership ***within*** Anderson & Koch's existing Dealer's Locality does not constitute a change to Anderson & Koch's Dealer's Locality. This assumption underpins each of the court's analyses. (*See* Add. 5-6; App. 358-359; R. Doc. 33, at 5-6 (acknowledging that a modification to Anderson & Koch's Dealer's Locality would be a modification of its franchise while, at the same time, determining that the establishment of new dealership within a Dealer's Locality does not modify the Dealer Agreement); Add. 6; App. 359; R. Doc. 33, at 6 (finding that Ford's creation of new dealership within Anderson & Koch's Dealer's Locality is separate from Ford's decision to change Anderson & Koch's Dealer's Locality).) Notably, the district court did not provide any support or explanation for this critical assumption. Based on the plain language of the MVSDA, however, the establishment of a new

31

dealership within an existing Dealer's Locality must necessarily constitute a change to that Dealer's Locality.

"When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (citation and quotation omitted). If a statute is unambiguous, the court may engage in no further construction or interpretation but must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996). The "words and phrases are construed according to the rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08.

The MVSDA defines "[a]rea of sales effectiveness" as "a geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch." Minn. Stat. § 80E.03, subd. 10b. "Area of sales effectiveness" is coterminous with the term "Dealer's Locality," which is expressly defined in the Dealer Agreement to "mean the locality designated in writing to the Dealer by the Company from time to time as the area of Dealer's sales and service responsibility for COMPANY PRODUCTS." (App. 34; R. Doc. 1-1, at 27 § 1(j).) Simply put, under the MVSDA, Anderson & Koch's

32

Dealer's Locality is a geographic territory that is specifically assigned to Anderson & Koch in which Anderson & Koch is responsible for selling and servicing Ford vehicles.

The MVSDA forbids a manufacturer from arbitrarily changing a Dealer's "area of sales effectiveness." Minn. Stat. § 80E.13(p). The district court determined that Anderson & Koch cannot challenge the Proposed New Dealership under Section 80E.13(p) because "Ford's creation of a new dealership in Forest Lake—the target of this lawsuit—is separate from Ford's decision to change Anderson & Koch's Dealer's Locality."[11] (Add. 6; App. 359; R. Doc. 33, at 6.) But constructing a dealership *inside* the Dealer's Locality *must* be a change to the Dealer's Locality. The district court does not explain how the result could be otherwise.

If a new competing dealer is installed within, and thus occupies a portion of, that same geographic territory constituting the Dealer's Locality, then that Dealer Locality has necessarily been modified. Of course, at a bare minimum, Anderson & Koch's Dealer's Locality cannot constitute the geographic area on which the new dealership resides. Moreover, if a new competing dealer is established within

_____

[11] The court failed to articulate any explanation or basis for concluding that Ford's proposed modification at issue is really two separate changes that must be analyzed separately: reassignment of tracts and establishment of a dealership. In reality, the two purported changes are intertwined and should be analyzed together. One does not exist without the other. The singular change proposed by Ford is the removal and reassignment of census tracts to a new dealership to be constructed inside the existing Dealer's Locality.

33

Anderson & Koch's Dealer's Locality, then Anderson & Koch can no longer be said to be "responsible" for that geographic territory under the MVSDA.

Under the plain language of the MVSDA, Ford's Proposed Change, which would establish the Proposed New Dealership within Anderson & Koch's Dealer's Locality, must necessarily constitute a change to Anderson & Koch's Dealer's Locality. As a result, Anderson & Koch has plausibly alleged a violation of Minn. Stat. § 80E.13(p) in that Ford arbitrarily undertook the Proposed Change, including as it relates to the Proposed New Dealership.[12]

### 2. The Proposed Change Constitutes a Change to Anderson & Koch's Franchise under Minn. Stat. § 80E.13(k)

With respect to Minn. Stat. § 80E.13(k), the MVSDA prohibits a manufacturer from modifying or replacing a "franchise," which is defined as "the written agreement" with the manufacturer, Minn. Stat. § 80E.03, subd. 8, with a succeeding franchise that would "adversely alter the rights or obligations" or "substantially impair[] the sales or service obligations or investments of the dealer." Minn. Stat. § 80E.13(k). The district court held that Anderson & Koch failed to plead a viable claim for violation of Minn. Stat. § 80E.13(k) because "Anderson & Koch does not allege that Ford will be modifying a single word of [the Dealer Agreement]." (Add.

---

[12] The same argument applies to Anderson & Koch's claims for declaratory judgment and breach of the implied covenant of good faith and fair dealing.

34

5-6; App. 358-359; R. Doc. 33, at 5-6.) The court's analysis is fundamentally incorrect.

Critically, the district court acknowledged that a change to Anderson & Koch's Dealer's Locality would constitute a change to its franchise: "Ford has consistently defined Anderson & Koch's Dealer's Locality in writing, and thus a modification of Anderson & Koch's Dealer Locality can plausibly be deemed to be a modification of its franchise for purposes of § 80E.13(k)." (Add. 6; App. 359; R. Doc. 33, at 6.) That conclusion is correct. Section 1(j) of the Dealer Agreement provides that Anderson & Koch's Dealer's Locality is the "locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility for COMPANY PRODUCTS." (App. 34; R. Doc. 1-1, at 27 § 1(j).)

On November 30, 2022, Ford issued the Notice of Proposed Change, in writing, advising of its intent to assign half of Anderson & Koch's census tracts to a new dealership within the boundaries of Anderson & Koch's current Dealer's Locality. (App. 80-85; R. Doc. 1-1, at 73-78.) By the district court's own reasoning, the Notice of Proposed Change effected a change to Anderson & Koch's "franchise" by modifying Anderson & Koch's Dealer's Locality as provided in Section 1(j) of the Dealer Agreement. (*See* App. 426-427; R. Doc. 48, at 39-40 (explaining that the Notice of Proposed Change constitutes a modification to Section 1 of the Dealer

Agreement).) Contrary to the district court's finding, Anderson & Koch **has** alleged that the Notice of Proposed Change modifies the written Dealer Agreement; it modifies the "franchise." Minn. Stat. § 80E.03, subd. 8 ("'Franchise' means the written agreement or contract between any new motor vehicle manufacturer and any new motor vehicle dealer which grants to the dealer the right to market motor vehicles and which purports to fix the legal rights and liabilities of the parties to the agreement or contract.").

Under the district court's analysis, Ford's Notice of Proposed Change, which modified Anderson & Koch's Dealer's Locality under Section 1(j) of the Dealer Agreement, must necessarily constitute a change to Anderson & Koch's franchise. As a result, Anderson & Koch has plausibly alleged a violation of Minn. Stat. § 80E.13(k), including as it relates to the Proposed New Dealership.[13]

## **CONCLUSION**

Anderson & Koch respectfully requests that this Court reverse the district court's November 30, 2023 Order, which fails to correctly apply the MVSDA. This court should, therefore, hold that Anderson & Koch has plausibly alleged violations of Minn. Stat. § 80E.13(p) and Minn. Stat. § 80E.13(k), including as it relates to the Proposed New Dealership.

---

[13] The same argument applies to Anderson & Koch's claims for declaratory judgment and breach of the implied covenant of good faith and fair dealing.

36

Dated:  April 15, 2024                         Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

By: s/ *Aaron G. Thomas*

    Aaron G. Thomas    (#0389011)
    Jordan L. Weber    (#0396769)
    Yuka Shiotani    (#0401989)
    Scott M. Flaherty    (#0388354)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile:  (612) 977-8650
Emails:    athomas@taftlaw.com
    jweber@taftlaw.com
    yshiotani@taftlaw.com
    sflaherty@taftlaw.com

**ATTORNEYS FOR APPELLANT
ANDERSON & KOCH FORD, INC.**

# CERTIFICATE OF COMPLIANCE

The undersigned counsel for Defendant-Appellant certifies that this brief complies with the requirements of Fed. R. App. P. 32(a) in that it is printed in 14 point, proportionately spaced typeface utilizing Microsoft Word 2016 and contains 8,702 words, including headings, footnotes and quotations and that the brief has been scanned for viruses and is virus-free.

Dated:  April 15, 2024

**TAFT STETTINIUS & HOLLISTER LLP**

By: s/ *Aaron G. Thomas*

Aaron G. Thomas      (#0389011)
Jordan L. Weber      (#0396769)
Yuka Shiotani        (#0401989)
Scott M. Flaherty    (#0388354)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile:  (612) 977-8650
Emails:      athomas@taftlaw.com
             jweber@taftlaw.com
             yshiotani@taftlaw.com
             sflaherty@taftlaw.com

**ATTORNEYS FOR APPELLANT
ANDERSON & KOCH FORD, INC.**

132263213

38