# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

ANDERSON & KOCH FORD, INC.

*Plaintiff-Appellant,*

v.

FORD MOTOR COMPANY

*Defendant-Appellee.*

Appeal from the United States District Court
for the District of Minnesota
Case No. 0:23-cv-00762
The Honorable Judge Jeffrey M. Bryan

## Response Brief of Defendant-Appellee Ford Motor Company

Sheila Therese Kerwin
NILAN & JOHNSON
250 Marquette Avenue, S. Ste. 800
Minneapolis, MN 55401
(612) 305-7500
skerwin@nilanjohnson.com

Elizabeth A. McNellie
BAKER & HOSTETLER, LLP
200 Civic Center Drive, Ste 1200
Columbus, OH 43215
(614) 462-2651
emcnellie@bakerlaw.com

Thomas J. Davis
David A. Porter
KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
tdavis@khvpf.com
dporter@khvpf.com

*Attorneys for Defendant-Appellee
Ford Motor Company*

## Summary of the Case

Appellant Anderson & Koch Ford, Inc.'s ("Anderson") statement of the case omits the heart of the district court's opinion: that Anderson *could* challenge Ford's modification of Anderson's "Dealer's Locality" area of responsibility under the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA"), but that it *could not* challenge Ford's distinct decision to approve a new dealership because Anderson is, among other things, ineligible for that relief under the specific provision of the MVSDA addressing limitations on establishing new dealerships.

Anderson thus could have sought relief for changes to the "Dealer's Locality" it discusses in its summary of the case. But its true goal is to stop Ford's approval of a new dealership. It thus dismissed its Dealer's Locality claims so it could appeal the part of the district court's order dismissing its challenge to the approval of a new dealership. The court's order is consistent with well-established Minnesota and federal law involving the interpretation of distinct portions of a comprehensive remedial scheme. It is also consistent with other states' cases involving this specific fact pattern. The judgment should be affirmed on the papers, but if argument is granted, 10 minutes per side is enough.

## Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Ford Motor Company makes the following disclosure:

(1) Ford Motor Company has no parent corporation; and

(2) No publicly held corporation owns 10% or more of its stock.

# Table of Contents

Summary of the Case ...................................................................................... i

Corporate Disclosure Statement ................................................................ ii

Table of Authorities .................................................................................... v

Jurisdictional Statement ........................................................................... vii

Statement of Issues Presented for Review ............................................... 1

Statement of the Case ................................................................................. 3

A.    Factual Background. ........................................................................ 3

B.    Procedural Background. ................................................................... 4

Summary of the Argument ......................................................................... 8

Introduction ............................................................................................... 11

Standard of Review ................................................................................... 12

Argument .................................................................................................... 13

I.    The district court correctly held that Anderson did not
      allege facts that would support a claim under §
      80E.13(k) or (p) related to Ford's approving a new
      dealership. ...................................................................................... 13

      A.    Anderson has not plausibly alleged that Ford
            changed its "franchise" (*i.e.*, the Sales and Service
            Agreement) with Anderson by approving a new
            dealership. ............................................................................. 14

      B.    Anderson did not plausibly allege that Ford's
            decision to approve a new dealership was a
            modification of Anderson's "area of sales
            effectiveness." ....................................................................... 17

II.     The district court correctly held that Anderson may not
        evade the MVSDA's specific provisions regarding
        enjoining new dealerships in § 80E.14 through resort to
        § 80E.13. ......................................................................... 19

        C.      Minnesota has long held that specific provisions
                control in a comprehensive statutory scheme. ..................... 19

        D.      The district court's opinion aligns with other
                state courts addressing the precise issue here. ................... 25

Conclusion ............................................................................. 29

Certificate of Compliance with Type-Volume Limit,
        Typeface Requirements, and Type Style Requirements
        and Statement Regarding Electronic Version of Brief ......................

Certificate of Service ..................................................................

# Table of Authorities

## Cases

*American Honda Motor Co. v. Bernardi's, Inc.*,
735 N.E.2d 348 (Mass. 2000)............................................................2, 26

*Connexus Energy v. Comm'r of Revenue*,
868 N.W.2d 234 (Minn. 2015)....................................................2, 20, 21

*Cox v. Mortg. Elec. Registration Sys., Inc.*,
685 F.3d 663 (8th Cir. 2012)...........................................................12, 13

*Daniel v. City of Minneapolis*,
923 N.W.2d 637 (Minn. 2019).................................................................22

*Don Simmons, Inc. v. Subaru of Am.*,
Index No. 2017-1930 (Chemung County Sup. Ct., Mar. 15, 2018)......27

*HCSC–Laundry v. United States*,
450 U.S. 1 (1981)....................................................................................20

*JJM Sunrise Auto. LLC v. Volkswagen Group of Am.*,
997 N.Y.S. 270 (Nassau County Sup. Ct. 2014)..............................2, 27

*K.T. v. Culver-Stockton Coll.*,
865 F.3d 1054 (8th Cir. 2017)................................................................13

*Koehnen v. Flagship Marine Co.*,
947 N.W.2d 448 (Minn. 2020)................................................................21

*Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.*,
2015 WL 9998814 (Nassau County Sup. Ct. 2015)..............................27

*North Star Int'l Trucks v. Navistar Inc.*,
2013 WL 1392939 (Minn. Ct. App. Apr. 8, 2013)..........................27, 28

*Parktown Imports Inc. v Audi of America, Inc.*,
278 S.W.3d 670 (Mo. 2009).........................................................2, 25, 26

*RadLAX Gateway Hotel, LLC v. Amalg. Bank,*
   566 U.S. 639 (2012)...............................................................................20

*Shakopee Chevrolet Inc. v. Gen. Motors LLC,*
   2021 WL 1785229 (D. Minn. May 5, 2021) ..........................................28

**Statutes**

28 U.S.C. § 1332 ......................................................................................vii

28 U.S.C. § 1441 ......................................................................................vii

Minn. Stat. § 80E.01...............................................................................21

Minn. Stat. § 80E.03........................................................................14, 16

Minn. Stat. § 80E.13.........................................................22, 23, 24, 26

Minn. Stat. § 80E.13(1) ..........................................................................18

Minn. Stat. § 80E.13(k) ..................................................................passim

Minn. Stat. § 80E.13(p) ..................................................................passim

Minn. Stat. § 80E.14.......................................................................passim

# Jurisdictional Statement

The district court had removal jurisdiction over this action (filed in Minnesota state court) under 28 U.S.C. § 1441(b) because the district court would have had original jurisdiction over the suit under 28 U.S.C. § 1332 based on complete diversity of citizenship between (1) Plaintiff Anderson & Koch Ford, Inc., a citizen of Minnesota; and (2) Ford Motor Company, a citizen of Michigan and Delaware.

As explained in detail in Ford's Motion to Dismiss Appeal for Lack of Appellate Jurisdiction, this Court lacks jurisdiction over this appeal. Anderson is attempting to appeal a non-final order of the district court in circumvention of Federal Rule of Civil Procedure 54(b) by voluntarily dismissing without prejudice all the claims left intact after the district court's partial grant of Ford's motion to dismiss—claims Anderson intends to reinstate post-appeal.

On March 25, 2024, this Court ordered that Ford's Motion to Dismiss Appeal for Lack of Appellate Jurisdiction will be resolved by the merits panel. Ford thus does not repeat its jurisdictional arguments here, but rests on the arguments contained in its motion.

## Statement of Issues Presented for Review

1. Does the Court lack jurisdiction over this appeal for the reasons set forth in Ford's pending Motion to Dismiss Appeal for Lack of Appellate Jurisdiction?

   Apposite Authority (set forth in the motion):

   - *In re Mun. Stormwater Pond Coordinated Litig.*, 73 F.4th 975, (8th Cir. 2023).

2. Anderson seeks to block Ford's approval of a new dealership under two provisions of the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA") concerning manufacturer changes to a dealer's contract and to a dealer's "area of responsibility." The district court dismissed Anderson's complaint with respect to its new-dealership claims, holding Anderson did not plead facts plausibly alleging that Ford's approval of a new dealership required such changes. Should the district court's decision be affirmed?

   Apposite Authority:

   - *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017) (setting forth matters that are part of the 12(b)(6) record).

- Minn. Stat. § 80E.13(k), (p)

3. The MVSDA has a specific section concerning limitations on a manufacturer's establishment of a new dealership. Anderson is admittedly ineligible for relief under that section, both substantively and procedurally. The district court held that Anderson may not circumvent the MVSDA's specific provisions addressing limitations on approval of new dealerships by resort to other, off-topic portions of the statute. Should the district court's decision be affirmed?

Apposite Authority:

- *Connexus Energy v. Comm'r of Revenue*, 868 N.W.2d 234 (Minn. 2015).

- *Koehnen v. Flagship Marine Co.*, 947 N.W.2d 448 (Minn. 2020)

- *Parktown Imports Inc. v Audi of America, Inc.*, 278 S.W.3d 670 (Mo. 2009)

- *American Honda Motor Co. v. Bernardi's, Inc.*, 735 N.E.2d 348 (Mass. 2000)

- Minn. Stat. § 80E.14.

**Statement of the Case**

**A.    Factual Background.** Plaintiff-Appellant Anderson & Koch Ford is a Ford dealership in North Branch, Minnesota. App. 14, R. Doc. 1-1, at 7. Anderson and Ford's relationship is governed by a Sales and Service Agreement ("Agreement"). App. 14-15, R. Doc. 1-1, at 7-8. The Agreement defines Anderson's "Dealer's Locality" as the "area of the Dealer's sales and service responsibility for" Ford products. App. 8 & 34, R. Doc. 1-1, at 8 & 27. The assignment of a Dealer Locality does not, however, make the dealership the sole entity allowed to sell Ford vehicles inside that locality. *See* App. 35 ¶ 2(a) ("the Dealer shall not be limited to the DEALER'S LOCALITY in making sales"), R. Doc. 1-1, at 28. And the Agreement indicates that more than one dealer might be assigned to a particular Dealer's Locality, setting forth a formula for assessing performance in such cases. App. 35 ¶ 2(a)(2). The Agreement gives Ford express discretion to modify the Dealer's Locality from time to time. App. 34 at ¶ 1(j), R. Doc. 1-1, at 27.

The Agreement also states that Ford has the "right to appoint additional dealers… within or without the DEALER'S LOCALITY." App. 45, R. Doc. 1-1, at 38. For new dealerships more than "ten (10)

miles driving distance of the Dealer's principal place of business," Ford does not have to notify Anderson of the approval. *Id.* As Anderson's counsel conceded, this provision gives Ford "carte blanche to insert additional dealers…." App. 397.

As of 2022, Anderson's Dealer Locality included 18 census tracts in and around North Branch. App. 17 ¶ 23, R. Doc. 1-1, at 10. Ford notified Anderson on November 30, 2022 that the Dealer's Locality would be modified in 90 days, with 9 of the 18 tracts removed from the Dealer's Locality. App. 17-18 ¶ 24 & App. 81-85, R. Doc. 1-1, at 11-12 & 74-78. Anderson alleges that Ford intends to assign these tracts to the Dealer Locality of a new Ford dealership in Forest Lake, Minnesota. App. 16-17 at ¶ 22 & App. 87, R. Doc. 1-1, at 9-10 & 80. The Forest Lake dealership will be about 20 miles from Anderson's dealership. *See id.*

Anderson objected, in writing, to the proposed change to the Dealer's Locality and objected to Ford approving a new dealership in Forest Lake, demanding that Ford rescind both decisions. App. 18 ¶¶ 26-27, R. Doc. 1-1, at 11. Ford refused to do so. *Id.*

**B.** **Procedural Background.** Anderson filed this lawsuit in state court on February 28, 2023. App. 12, R. Doc. 1-1, at 5. Anderson

sought to enjoin Ford's proposed changes to the Dealer's Locality and Ford's plan to approve the new proposed dealership. App. 24-28 ¶¶ 50, 56, 62, 67, 73, R. Doc. 1-1, at 17-21. It also sought monetary relief. *See id.* The lawsuit had four counts: violation of the Motor Vehicle Sale and Distribution Act ("MVSDA") by unfairly modifying a franchise under Minn. Stat. § 80E.13(k); an MVSDA count for arbitrarily assigning an area of sales effectiveness under § 80E.13(p); declaratory judgment; and breach of the implied covenant of good faith and fair dealing. See *id.*

Ford removed the case to federal court. App. 7, R. Doc. 1. It then moved to dismiss all the claims, but mainly challenged Anderson's attempt to block the establishment of a new Ford dealership without following the sole avenue for such a challenge under Minnesota law (set forth in Minn. Stat. § 80E.14.) App. 126-135, R. Doc. 15, at 1-10.

On November 30, 2023, the district court granted Ford's motion in part and denied it in part. R. Doc. 33, at 9. It noted Anderson's "primary goal in filing this lawsuit is to block the establishment of the new (and competing) Ford dealership in Forest Lake." App. 357, R. 33, at 4. It noted that Anderson "has not, however, invoked § 80E.14, undoubtedly because" that section—which only gives a dealer the right to challenge

new dealerships within 10 miles of an existing dealership—"plainly does not give [Anderson] the right to block Ford's proposed new dealership." App. 358, R. 33, at 5. The district court then held that Anderson could not "do an end run around § 80E.14's restrictions by relying on" other sections of the MVSDA. *Id.*

As to Anderson's § 80E.13(k) claim, the court held that § 80.13(k) prohibited modifications or replacement of a "franchise," which is the written agreement between the manufacturer and dealer. *Id.* Anderson, however, did "not allege that Ford will be modifying a single word of that agreement" and "therefore failed to plead a viable claim." *Id.* As to the § 80E.13(p) claim (for changing an "area of sales effectiveness"), the court held that Ford's change to Anderson's Dealer Locality was distinct from Ford's approving a new dealership, and that only the former fell within § 80E.13(p)'s prohibition on "arbitrarily assigning or changing a dealer's area of sales effectiveness."[1] App. 359, R. Doc. 33, at 6.

---

[1] The court did hold that Anderson plausibly alleged claims related to the actual proposed modification of the Dealer Locality itself; *i.e.*, the removal of the census tracts. App. 359-360, R. Doc. 33, at 6-7. But because Anderson has dismissed those claims (albeit with an intention to reinstate them later, *see supra* at v) those rulings are not at issue.

Finally, the court held Anderson could not enjoin Ford's approval of a new dealership through the off-topic provisions of §80E.13(k) or (p), contrary to § 80E.14's specific provision for enjoining new dealerships. App. 361, R. Doc. 33, at 8. It noted the "bizarre" outcome that would result if the statute was interpreted otherwise, like giving dealers *more* power to block new dealerships outside § 80E.14's 10-mile enforcement area than within it. *Id.* The court reasoned that reading the MVSDA as Anderson demanded would "do violence to the scheme prescribed by the Minnesota Legislature after balancing the interests of manufacturers, dealers, and consumers." *Id.*

The Court thus granted Ford's motion to dismiss to the extent Anderson sought injunctive or other relief related to the establishment of a new dealership, but denied the motion otherwise. App. 362, R. Doc. 33, at 9. A week later, Anderson's counsel told Ford's counsel that it "intends to file a Rule 54(b) motion for the entry of final judgment on" the dismissed claims, and sought Ford's concurrence. App. 432. Ford declined to concur. App. 431. Anderson then scheduled a hearing on its Rule 54(b) motion for January 23, 2024. App. 430.

Before the hearing occurred, however, the case was reassigned from Judge Patrick J. Schiltz to newly-appointed Judge Jeffrey M. Bryan. App. 5, R. Doc. 35 (text-only). As a result, the scheduled hearing on the Rule 54(b) motion was cancelled. *Id.* Rather than notice a new hearing, Anderson sought dismissal without prejudice of the remaining claims. App. 379, R. Doc. 36. The district court dismissed the remaining claims on January 30, 2024 and entered judgment on January 31, 2024. App. 382-383, R. Doc. 38, 39. A little over two hours after judgment was entered, Anderson filed a notice of appeal. App. 384, R. Doc. 40.

Ford moved to dismiss the appeal on jurisdictional grounds for lack of finality, citing Anderson's attempt to evade the procedures of Rule 54(b) by voluntarily dismissing its remaining claims while intending to re-file those claims after appeal. *See supra* at v. The Court ordered that the merits panel would resolve the motion to dismiss. *Id.*

## Summary of the Argument

The MVSDA has a specific section addressing limitations on a manufacturer's ability to establish new dealerships and imposes those limitations only within a 10-mile radius of an existing dealership. Plaintiff-Appellant Anderson wishes to challenge Ford's approval of a

new dealership more than 10 miles away from it; it is thus ineligible for relief under the MVSDA's relevant provision. So instead, Anderson sought to block Ford's new dealership with claims under two off-topic provisions of the MVSDA concerning manufacturer changes to a dealer's contract and a dealer's geographic "area of responsibility."

The district court dismissed Anderson's complaint insofar as it sought to challenge Ford's new-dealership decision under these off-topic provisions. It first held that Anderson had not pled facts that plausibly set forth a claim for relief under the off-topic provisions, because Ford's approval of a new dealership (1) did not require a change in its contract with Anderson; and (2) did not require a change in Anderson's area of responsibility. It then held that Anderson could not, in any event, rely on off-topic provisions of the MVSDA to circumvent the statute's specific provision addressing limitations on new dealerships. The district court was correct on both fronts.

**1.      Failure to state a claim under the off-topic statutes.**

On the "change to the contract" theory, Anderson's own pleadings (and documents attached to the same) confirm that the parties' contract expressly allows Ford to approve new dealerships more than 10 miles

away from Anderson without notice. And Anderson did not allege that Ford needed to (or did) change the Ford-Anderson contract to approve the new dealership.

As to the "area of responsibility" theory, Ford's decision to approve a new dealership was distinct from any decision to change the "area of responsibility." Anderson argues on appeal that Ford's approval of a new dealership *necessarily* requires Ford to change the geographic area of responsibility, but the parties' contract itself states just the opposite: multiple dealerships can share the same area of responsibility. The record confirms the district court's holding that Ford's decision to approve a new dealership is a distinct act from its change to an area of sales effectiveness, and that Anderson did not plausibly state a claim for relief against the new-dealership decision based on any distinct decision to change Anderson's area of responsibility.

## 2. Anderson's improper circumvention of the MVSDA.

Well-established law provides that when one portion of a comprehensive remedial scheme addresses a specific problem with specific solutions, that specific provision controls over other, off-topic provisions of the same statute. The district court held, consistent with this principle, that

Anderson could not circumvent the carefully crafted procedures of the MVSDA limiting the establishment of new dealerships by resort to other provisions of the act not directed at that issue. The district court's decision aligns with the other state courts that have addressed this specific fact pattern under their states' equivalent to the MVSDA.

## Introduction

Anderson's brief contains subtle but intentional omissions: it never uses the words "injunction," "enjoin," or any variant thereof. By so doing, it refuses to acknowledge the actual legal question at issue. The district court specifically held that Anderson has no legal grounds to block Ford from approving a new dealership in Forest Lake, Minnesota. This is because § 80E.14 of the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA") specifically addresses "Limitations on establishing… dealerships," but it applies only to (1) new dealerships within 10 miles of an existing dealership; and (2) by a lawsuit filed within 30 days of receiving notice. Here, Anderson wants to block a new dealership that is more than 10 miles away, and it sued 90 days after receiving notice. Anderson undisputedly cannot enjoin Ford's dealership under § 80E.14, and so did not bring a § 80E.14 claim in its lawsuit.

The primary question presented is whether Anderson may end-run § 80E.14's provisions through off-topic provisions of a different section of the MVSDA addressing modifications to a dealer's contract, and changes to a dealer's geographic area of sales effectiveness—in effect, obtaining relief the Minnesota Legislature declined to provide in the specific section of the law addressing limitations on new dealerships. The district court logically, and correctly, held it could not. Anderson's decision to approve a new dealership was distinct from proposed changes to Anderson's area of sales effectiveness, and thus fell outside the actual terms of the two off-topic statutory provisions Anderson relies on. And, in any event, those off-topic statutory provisions cannot be read to permit injunctive or other relief against a manufacturer's establishment of a new dealerships contrary to the specific provisions of the MVSDA dealing with that topic.

## Standard of Review

This court reviews a district court's grant of a motion to dismiss *de novo*. *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012). A plaintiff's complaint must allege enough facts that, if true, "state a claim to relief that is plausible on its face." *Id.* (internal

quotation marks omitted). A claim is facially plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In so determining, this court will consider "only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017).

## Argument

The district court's dismissal relied on two grounds: (1) Anderson did not allege facts that supported relief with respect to Ford's decision to open a new dealership under the plain language of § 80E.13(k) and (p); and (2) the MVSDA's specific enumeration of when a party could enjoin the opening of a new dealership in § 80E.14—relief Anderson did not seek and was not eligible for—precluded Anderson from obtaining that relief from the off-topic provisions of § 80E.13. The district court was correct on both fronts.

**I.  The district court correctly held that Anderson did not allege facts that would support a claim under § 80E.13(k) or (p) related to Ford's approving a new dealership.**

Anderson's brief mainly challenges the district court's statutory interpretation ruling giving effect to the Legislature's specific judgment on when new-dealership decisions can be restricted. But it scarcely

addresses the district court's initial holding: Anderson's allegations do not fit within the two off-topic statutory provisions its complaint relies on. And with good reason. The first statutory subsection Anderson relies on prohibits a manufacturer from modifying certain <u>contractual language</u>, but Ford's ability to approve new dealers required no changes to Ford's contract with Anderson—including the "Dealer's Locality" provision at issue. The second statutory subsection addresses changes to a dealer's area of responsibility. Here, that is the Dealer's Locality, and (again) Ford need not change the Dealer's Locality to approve a new dealership. Anderson is trying to fit a square peg in a round hole. This Court could affirm the district court on this basis alone.

### A. Anderson has not plausibly alleged that Ford changed its "franchise" (*i.e.*, the Sales and Service Agreement) with Anderson by approving a new dealership.

The district court correctly held that Anderson did not state a claim under § 80E.13(k) with respect to the new-dealership decision. This provision makes it an "unlawful and an unfair practice" to:

> threaten to modify or replace or modify or replace a franchise with a succeeding franchise that would adversely alter the rights or obligations of a new motor vehicle dealer under an existing franchise or that substantially impairs the sales or service obligations or investments of the motor vehicle dealer;

*Id.* The "franchise" is defined as "the written agreement or contract between" the dealer and the manufacturer fixing their legal rights. Minn. Stat. § 80E.03(8). Anderson conceded to the district court that the "franchise" here is the Sales and Service Agreement attached to Anderson's Complaint. *See* App. 392.

So understood, the district court correctly held that Anderson did not allege that Ford made *any* change to the "franchise" by deciding to open a new dealership. *See* App. 358-59. Rather, Anderson (1) complains its Dealer's Locality is being changed by removal of census tracts; and (2) believes Ford intends to assign those tracts to a new dealership. App. 355.

The district court held that Anderson plausibly alleged that Ford modified the Dealer's Locality by removing census tracts, and therefore stated a claim for relief under § 80E.13(k). App. 359. That decision is not before this Court on appeal, as Anderson dismissed the claim.

But the district court also held that Ford's changing the Dealer's Locality is *different* from Ford approving a new dealership. App. 358-59. The Dealer's Locality is merely the territory against which a dealer's performance is measured. *Supra* at 2. It does not limit the customers a dealer may sell to, and it might be shared by more than one dealer. *Id.*

A different section of the "franchise" specifies that Ford can "appoint additional dealers… within or without the Dealer's Locality," and without notice to Anderson for new dealerships more than 10 miles from Anderson. *Supra* at 2-3. Thus, as the district court correctly observed, Ford's decision to approve a new dealership does not itself require "modifying a single word of" the parties' "franchise." App. 359.

Nor does Anderson's complaint plead any facts indicating that Ford had to change the "franchise" to approve a new dealer. To the contrary, Anderson alleges that Ford made the decision on its own, and that it only deduced that Ford approved a new dealership through a review of Forest Lake municipal records. *See* App. 16-17, R. Doc. 1-1, ¶¶ 21-22. Anderson's appellate brief does not meaningfully address this reasoning. Instead, it conflates the Dealer's Locality and new-dealership decisions and claims the district court "assum[ed]" without explanation that the two were distinct acts. Appellant's Br. 31-32, 34-35. In fact, Anderson's counsel conceded at argument that Ford had "carte blanche" to establish new dealerships, App. 397, and agreed that "nothing expressly is being modified or changed" in the "franchise" with respect to the new-dealership decision. App. 398-99.

Anderson's complaint claimed two distinct alleged wrongs: (1) a change to the Dealer's Locality, which allegedly required changing the Ford-Anderson contract; and (2) Ford's approval of a new dealership, which did not modify any contractual language at all. Anderson had— but abandoned—a potential remedy for the first claim. But it has not plausibly alleged that Ford modified a "franchise" when it approved a new dealership. The district court correctly dismissed that claim.

### B. Anderson did not plausibly allege that Ford's decision to approve a new dealership was a modification of Anderson's "area of sales effectiveness."

The district court also correctly held Anderson did not state a claim for violating § 80E.13(p) over Ford's new-dealership decision. That section states that it is an unfair practice to "assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." *Id*. The "area of sales effectiveness" is defined as the "geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch." § 80E.03(10)(b). Anderson

concedes the Dealer's Locality is the "area of sales effectiveness" under the Agreement. App. 25, R. Doc. 1-1, at 18 ¶ 60; App. 395.

As with the § 80E.13(k) claim, Anderson ignores that § 80E.13(p) prohibits changes to a dealer's area of sales effectiveness—here, the Dealer's Locality. As the district court held, Ford's approval of a new dealership itself does not require or reflect a modification of a Dealer's Locality. And Anderson did not plead facts claiming otherwise. Instead, it alleges that Ford assigned certain census tracts to Anderson in writing, and then announced it would change those census tracts going forward. App. 16-18, R. Doc. 1-1, at 9-11 ¶¶ 21-25. Anderson's appellate brief now argues that adding a new dealership *requires* a change in the Dealer's Locality (Br. at 33-34) but that is belied by the Agreement that Anderson attached to its Complaint. As discussed, the Agreement contemplates that multiple dealerships can share a Dealer's Locality. *Supra* at 2. Thus, Ford's decision to approve a new dealership did not *require* a change in any geographical area of sales effectiveness; that was a distinct act. The district court's ruling that Anderson failed to state a claim under the plain text of §80E.13(p) should be affirmed.

**II. The district court correctly held that Anderson may not evade the MVSDA's specific provisions regarding enjoining new dealerships in § 80E.14 through resort to § 80E.13.**

Section 80E.14 of the MVSDA specifically addresses "limitations on establishing or relocating dealerships." It sets forth a detailed set of procedures and substantive standards for determining when a manufacturer may do so. *Id.* But its provisions apply only within a "radius of ten miles" around an existing dealership, and a party challenging a new dealership must sue within 30 days of receiving notice. *Id.* § 80E.13(1). Here, Anderson challenges Ford's approval of a new dealership more than 10 miles away, with a lawsuit filed February 28, 2023—more than 30 days after it alleges it received notice on December 2, 2022. App. 16, R. Doc. 1-1, at 9 ¶ 21. It does not (and cannot) seek relief under § 80E.14. App. 358. Given this, the district court correctly held that Anderson may not evade the legislature's carefully crafted statutory scheme and its specific process for challenging new dealerships by using off-topic MVSDA provisions.

**C. Minnesota has long held that specific provisions control in a comprehensive statutory scheme.**

It is a "well settled" principle of law that "specific terms covering the given subject matter will prevail over general language of the same

or another statute which might otherwise prove controlling." *Connexus Energy v. Comm'r of Revenue*, 868 N.W.2d 234, 242–43 (Minn. 2015). This principal "often applies in situations in which the general and the specific provisions exist side by side, and the two are interrelated and closely positioned, both in fact being parts of the same statutory scheme." *Id.* (cleaned up) (quoting *RadLAX Gateway Hotel v. Amalg. Bank,* 566 U.S. 639 (2012) & *HCSC–Laundry v. United States,* 450 U.S. 1 (1981)). It "has particular applicability when, as here, the Legislature has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* at 242 (cleaned up).

In *Connexus Energy,* the state tax commission used its general assessment authority (with a 3 ½ year statute of limitations) to recover an excess sales tax refund from the petitioners. *Id.* at 236-37. The Minnesota Supreme Court agreed that the lawsuit fell within the language of the general-assessment portion of that statute. *Id.* at 242. However, there was a specific code section related to actions regarding recovery of excess sales tax refunds—and the statute of limitations for a claim under that section had expired. *Id.* Thus, despite the facial applicability of the general assessment portion of the statute, both the

general and specific provisions were "part of a comprehensive scheme regulating the administration of, and compliance with, the Minnesota tax code." *Id.* The provision regarding sales tax refunds was a specific problem with a specific solution, and so the specific provision had to be followed in lawsuits involving that subject matter. *Id.* at 243.

Similarly, in *Koehnen v. Flagship Marine Co.*, 947 N.W.2d 448 (Minn. 2020), a chiropractor sought reimbursement of medical expenses under a section of the worker's compensation statute allowing petitions raising a "dispute as to a question of law or fact" on compensation. *Id.* at 452. Another part of the statute specified procedures by which health care providers could seek reimbursement, but the chiropractor had not followed them. *Id.* The court—noting that both provisions were part of a comprehensive statutory scheme—held that the statute's creation of specific mechanisms for health care providers to recover payments was exclusive, and controlled over the off-topic provisions. *Id.* at 454-55.

The principles of *Connexus* and *Koehnen* control here.[2] The MVSDA is a comprehensive statutory scheme directed at preventing

---

[2] Anderson's brief ignores the *Koehnen* line of authority, despite it being raised in Ford's briefing in the district court. *See* App. 131-132. Instead,

abusive practices by manufacturers. Minn. Stat. § 80E.01 (stating

legislative purpose and intent). Section 80E.14 is a specific statutory

provision addressing a specific issue: "Limitations on establishing or

relocating dealerships." It permits injunctions against approval of new

dealerships within a 10-mile radius of existing dealerships, upon a suit

by an existing dealer within a 30-day statute of limitations. *See id.* It

permits a new dealership only upon a manufacturer's showing of good

cause, sets forth detailed factors a court must consider in determining

whether good cause for a new dealership exists, and requires an

expedited resolution. *Id.* By contrast, § 80E.13(p) and (k) are in a

separate section of the MVSDA, and address different topics: changes to

dealer contracts and dealer areas of responsibility.

Thus, even if § 80E.13(p) or (k) could be read to include Ford's

decision to approve of a new dealership—and, as discussed, they

---

it cites *Daniel v. City of Minneapolis*, 923 N.W.2d 637 (Minn. 2019) for
the proposition that an exclusive remedy in one statutory scheme (for
workplace injuries) did not override a different exclusive remedy in a
different statutory scheme (a civil rights statute.) Appellant's Br. 23-24.
But *Koehnen*, as here, involved different parts of the *same* statutory
scheme—ironically, the same worker's compensation statute at issue in
*Daniel*. Given that Anderson is trying to circumvent specific
requirements of the MVSDA with *other* non-specific provisions of the
MVSDA, *Koehnen* controls the analysis here.

cannot—the specific provisions applicable to challenging the establishment of dealerships under § 80E.14 must control over the off-topic provisions of § 80E.13. The legislature determined, in § 80E.14, that the MVSDA would only regulate a manufacturer's free-market ability to approve new dealerships in a limited geographic area. It gave dealers only 30 days to challenge new dealership decisions. It set forth a detailed nine-factor test to govern when a new dealership would be allowed. And it required an expedited decision.

That specific provision controls over § 80E.13, a provision that does not address challenges to new dealerships, and which does not contain § 80E.14's procedural and substantive requirements. As the district court found, to hold otherwise "would do violence to the scheme prescribed by the Minnesota Legislature after balancing the interests of manufacturers, dealers, and consumers." App. 361. The legislature's expressed intent in § 80E.14 to allow challenges to new dealers within 10 miles of existing dealerships would be nullified, and its procedures a dead letter. Instead, existing dealerships could sue to block new dealership decisions inside *or* outside the 10-mile radius, without complying with § 80E.14's 30-day statute of limitations. And rather

than being assured that they could approve new dealerships guided by the Legislature's detailed, multi-factored list in § 80E.14(2) defining "good cause," manufacturers would face ill-defined, slow, and nebulous challenges of "unfairness" by dealers—like Anderson—whose primary concern is a desire to avoid free-market competition.

Even if Anderson claimed that § 80E.14 exclusively applies if the new dealership was within the 10-mile radius of that statute, but that § 80E.13 applied outside the 10-mile radius, that would lead to bizarre results. The Legislature thought existing dealerships might be harmed by the opening of a new, nearby dealership, but ensured that a manufacturer could do so if it showed "good cause," in expedited proceedings. But it did not conclude that "good cause" was needed for new competition farther away. It makes no sense that the Legislature would allow dealers like Anderson *more* power under the MVSDA to challenge dealerships that are farther away, regardless of "good cause," and with a much longer statute of limitations (90 days under § 80E.13 versus § 80E.14's 30-days). This would allow existing dealers to drag out proceedings against faraway dealerships under a nebulous standard of relief, rather than well-defined and speedy standards for nearby new

dealers. That is not how a comprehensive statutory scheme should be interpreted. The Court should not accept Anderson's invitation to do so.

**D.    The district court's opinion aligns with other state courts addressing the precise issue here.**

While the Minnesota courts have not specifically addressed the interplay between the specific § 80E.14 new-dealership provisions and the non-specific provisions of § 80E.13, courts of other states with statutes like the MVSDA have held that specific provisions governing challenges to new dealerships, like § 80E.14, are the exclusive vehicles for such challenges and may not be circumvented by resort to other, non-specific statutory provisions.

For instance, in *Parktown Imports Inc. v Audi of America, Inc.*, 278 S.W.3d 670 (Mo. 2009), a dealer tried to block a new dealership by claiming it violated that state's Motor Vehicle Franchise Practices Act, which prohibited "capricious, in bad faith, or unconscionable" practices by a manufacturer. *Id.* at 672. The statute, however, had a specific provision addressing challenges to the establishment of new dealers, but it only applied within a 6-mile radius, while the dealership being challenged was 10 miles away. *Id.* at 673. The Missouri Supreme Court held that the specific statutory provision controlled, as it reflected the

legislature's intent to regulate new dealerships within 6 miles, but otherwise allow "the open market to govern itself." *Id.*

Likewise, in *American Honda Motor Co. v. Bernardi's, Inc.*, 735 N.E.2d 348 (Mass. 2000), an existing dealer tried to block a new dealership under a provision of the state's vehicle dealer law prohibiting "any action which is arbitrary, in bad faith, or unconscionable." *Id.* at 355. The statute had a specific provision addressing challenges to the establishment of new dealerships, limited to a specific geographic area around the existing dealer. *Id.* The Massachusetts Supreme Judicial Court held that the specific provision controlled and that the dealer could not use the off-topic statute to evade the geographical limit. *Id.* To hold otherwise "would undermine and essentially nullify the statute," including the "legislative determination that only dealers… in certain proximity to the prospective new dealership" may "challenge and potentially prevent new competition." *Id.* at 355-56.

Apart from these two state supreme courts, several lower courts in other jurisdictions have reached the same conclusion about their states' equivalents to the MVSDA. Specific provisions of a statute addressing challenges to the establishment of new dealerships are the exclusive

grounds for new-dealership challenges. *See JJM Sunrise Auto. LLC v. Volkswagen Group of Am.*, 997 N.Y.S. 270, 280 (Nassau County Sup. Ct. 2014) (rejecting attempt to block new dealers with off-topic provisions rather than the specific provision applicable to the establishment of new dealerships, holding that this "would render meaningless the relevant market area limitation in the Dealer Act and the cause of action that it creates."); *Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.*, 2015 WL 9998814, *7 (Nassau County Sup. Ct. 2015) (same); *Don Simmons, Inc. v. Subaru of Am.*, Index No. 2017-1930 (Chemung County Sup. Ct., Mar. 15, 2018) (same) (reproduced at App. 139-145).

By contrast, Anderson does not cite a single case holding that a party can block approval of a new dealership under § 80E.13 when that relief is unavailable under § 80E.14. It first cites *North Star Int'l Trucks v. Navistar Inc.*, 2013 WL 1392939, at *9 (Minn. Ct. App. Apr. 8, 2013), but that case did not involve the issue before this Court. Instead, in *North Star*, the court found that plaintiff had properly brought *different* claims—including Count III under § 80E.13(k) for "removing… 51 zip codes" from its dealer's locality, *id.* at *3-4, and Count VII under § 80E.14 because the manufacturer "approved [the] establishment of

additional locations … within ten miles of" the existing dealer's locations, *id.* at *9. These were two distinct claims, for distinct acts (removing tracts and establishing new dealerships within 10 miles), both of which fell *within* the respective statutory language.[3]

Anderson also cites *Shakopee Chevrolet*, which did not involve a challenge to the establishment of a new dealership at all, and thus did not involve the question presented here. *Shakopee Chevrolet Inc. v. Gen. Motors LLC*, 2021 WL 1785229, at *4 (D. Minn. May 5, 2021). Anderson faults the district court for not "considering or addressing" these cases (Appellant's Br. at 28, 30). In fact, the district court acknowledged both cases at argument, stating that it did not believe either case contained a relevant, detailed analysis of the issues at hand. App. 393.

Ultimately, Ford's authorities all support the district court's reasoning and adhere to the well-established background principles of statutory interpretation cited above. Like the statutes in *Parktown*, *American Honda*, *Luxury Autos*, *Simmons*, and *JJM Sunrise*, § 80E.14 of the MVSDA (1) specifically addresses challenges to new dealerships;

---

[3]Thus, if anything, *Navistar* supports the district court's reasoning that Ford's removal of census tracts and its approval of a new dealership are distinct acts, each implicating distinct statutory provisions. *Supra* at 5.

(2) outlines a specific challenge procedure; and (3) limits these challenges to a certain geographical area around existing dealers. If these specific provisions are not given exclusive effect, § 80E.14 would be a nullity, including the Legislature's decision to limit the free market only in a 10-mile radius around existing dealers. If Anderson wants the power to challenge new dealerships that are more than 10 miles away from its dealership, that is an issue it should address with the Legislature; it should not be achieved through attempts at creating loopholes in a comprehensive regulatory scheme.

## Conclusion

Ford Motor Company asks this Court to dismiss Anderson's appeal for lack of jurisdiction. If the Court does not dismiss for lack of jurisdiction, the Court should affirm the district court's holding.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: *s/Thomas J. Davis*
    Thomas J. Davis
    David A. Porter
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com

dporter@khvpf.com

Sheila Therese Kerwin
NILAN & JOHNSON
250 Marquette Avenue, S. Ste. 800
Minneapolis, MN 55401
(612) 305-7500
skerwin@nilanjohnson.com

Elizabeth A. McNellie
BAKER & HOSTETLER, LLP
200 Civic Center Drive, Ste 1200
Columbus, OH 43215
(614) 462-2651
emcnellie@bakerlaw.com

Attorneys for Defendant-Appellee
Ford Motor Company

Dated:  May 16, 2024
512392

### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, Type Style Requirements, and Statement Regarding Electronic Version of Brief

1.     This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because this motion does not exceed 13,000 words. This document contains 5,988 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century Schoolbook.

3.     Pursuant to 8th Circuit Local Rule 28A(h)(2), the electronic version of the brief has been scanned for viruses and is virus-free.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: *s/Thomas J. Davis*
  Thomas J. Davis
  David A. Porter
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com
dporter@khvpf.com

Dated:  May 16, 2024

**Certificate of Service**

I hereby certify that on May 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

s/*Thomas J. Davis*
Thomas J. Davis
Kienbaum Hardy Viviano
 Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com