**No. 24-1204**

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

ANDERSON & KOCH FORD, INC.

*Plaintiff-Appellant*,

v.

FORD MOTOR COMPANY

*Defendant-Appellee.*

Appeal from the United States District Court
for the District of Minnesota
Case No. 0:23-cv-00762
The Honorable Judge Jeffrey M. Bryan

**REPLY BRIEF OF PLAINTIFF-APPELLANT
ANDERSON & KOCH FORD, INC.**

Aaron G. Thomas
Jordan L. Weber
Yuka Shiotani
Scott M. Flaherty
Taft Stettinius & Hollister LLP
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone:   (612) 977-8400
Facsimile:    (612) 977-8650
athomas@taftlaw.com

*Attorneys for Appellant Anderson & Koch Ford, Inc.*

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    FORD FAILS TO SHOW THAT MINN. STAT. § 80E.14 IS THE
EXCLUSIVE MECHANISM BY WHICH A DEALER MAY
CHALLENGE A NEW DEALERSHIP ............................................................ 2

    A.    The "specific / general" canon of statutory interpretation is
inapplicable ......................................................................................... 2

    B.    Ford's out-of-state decisions are inapposite ...................................... 8

II.    FORD MISREADS THE COMPLAINT TO ARGUE THAT
ANDERSON & KOCH HAS NOT STATED A CLAIM FOR
RELIEF ............................................................................................................ 11

    A.    Ford's establishment of a new dealership within the existing
Locality is a change to the Locality under Minn. Stat. §
80E.13(p) ............................................................................................. 11

    B.    Ford's decision modifies the franchise under Minn. Stat. §
80E.13(k) ............................................................................................. 14

CONCLUSION ................................................................................................... 16

Appellate Case: 24-1204    Page: 2    Date Filed: 06/07/2024 Entry ID: 5401695

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co., Inc. v. Bernardi's, Inc.,*
   735 N.E.2d 348 (Mass. 2000) ......................................................................10, 11

*Connexus Energy v. Comm'r of Revenue,*
   868 N.W.2d 234 (Minn. 2015) ..........................................................................5

*GPI-AL, Inc. v. Nissan North America, Inc.,*
   2019 WL 5269101 (S.D. Ala. 2019) ...............................................................6, 7

*Koehnen v. Flagship Marine Co.,*
   947 N.W.2d 455 (Minn. 2020) ..........................................................................5

*Parktown Imp., Inc. v. Audi of Am., Inc.,*
   278 S.W.3d 670 (Mo. 2009) ...........................................................................8, 10

*Shakopee Chevrolet Inc. v. General Motors LLC,*
   No. CV 20-2366, 2021 WL 1785229 (D. Minn. May 5, 2021).......................4, 8

**Statutes**

Minn. Stat. § 80E.03 .............................................................................................14

Minn. Stat. § 80E.13 ........................................................................................3, 4, 8

Minn. Stat. § 80E.13(a)–(s)....................................................................................2

Minn. Stat. § 80E.13(k)..................................................................................*passim*

Minn. Stat. § 80E.13(p)..................................................................................*passim*

Minn. Stat. § 80E.14 .....................................................................................*passim*

Minn. Stat. § 645.26..........................................................................................4, 5

Appellate Case: 24-1204     Page: 3     Date Filed: 06/07/2024 Entry ID: 5401695

# INTRODUCTION

Anderson & Koch commenced this action because Ford intends to eliminate half of the census tracts within Anderson & Koch's specifically designated "Dealer's Locality" and assign those same tracts to a new dealership to be constructed inside its existing Locality. Ford's proposed change violates Sections 80E.13(p) and (k) of the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA") by: (1) modifying Anderson & Koch's franchise vis-à-vis another franchise and substantially impairing its sales and service obligations and investments; and (2) changing its Dealer's Locality arbitrarily and without due regard to the current pattern of motor vehicle sales.

Ford's reliance upon the "specific / general" canon of statutory interpretation to argue that Section 80E.14 provides an exclusive mechanism by which a dealer may challenge a new dealership is without merit. That canon only applies where two statutory provisions are in irreconcilable conflict. Here, not only is there no conflict between Section 80E.14 and Section 80E.13, but Ford's argument ignores the plain text of the MVSDA and impermissibly reads language into the statute that does not exist on its face. Ford likewise misreads the complaint in arguing that Anderson & Koch has not stated a claim for relief. The establishment of the Proposed New Dealership within Anderson & Koch's existing Dealer's Locality

1

constitutes both a change to the Dealer's Locality under Section 80E.13(p) as well as a change to its franchise under Section 80E.13(k)

Because the district court failed to correctly apply the MVSDA in its November 30, 2023 Order, this Court should reverse.

## ARGUMENT

## I. FORD FAILS TO SHOW THAT MINN. STAT. § 80E.14 IS THE EXCLUSIVE MECHANISM BY WHICH A DEALER MAY CHALLENGE A NEW DEALERSHIP

This Court should reverse the district court's decision because Minn. Stat. § 80E.14 is not the exclusive mechanism by which a dealer may challenge the establishment of a new dealership under the MVSDA.

### A. The "specific / general" canon of statutory interpretation is inapplicable

In arguing that Minn. Stat. § 80E.14 provides the exclusive mechanism by which a dealer may challenge a new dealership, Ford invokes the "specific / general" canon of statutory interpretation as its primary argument. Appellee Br. at 19-25. Ford's reliance on this canon is misplaced.

As an initial matter, Ford does not challenge the fact that the MVSDA provides multiple independent statutory bases to challenge a manufacturer's actions—nor could it. The Minnesota legislature, in enacting the MVSDA, prohibited multiple actions by automotive manufacturers as being unlawful and unfair practices. *See* Minn. Stat. § 80E.13(a)–(s); Minn. Stat. § 80E.14. The fact that

2

the legislature prohibited manufacturers from taking various actions through independent statutory provisions reflects the reality that a manufacturer might seek to unlawfully or unfairly use its unchecked economic leverage to the detriment of a local dealer through a variety of means.

Likewise, Ford ignores Anderson & Koch's argument that the district court's decision impermissibly reads language into the MVSDA that does not exist on its face. It is undisputed that there is nothing in the text of the MVSDA that provides, or even suggests, that the existence of statutory redress under one provision, such as Minn. Stat. § 80E.14, renders that provision the exclusive remedy for a dealer or somehow prohibits the dealer from pursuing remedies for other violations of the MVSDA. Nor is there any language directing that primacy be afforded to Section 80E.14 over Section 80E.13. Ford, like the district court, ignores this reality.

Against this backdrop, Ford resorts to the specific / general canon of statutory interpretation to argue that Minn. Stat. § 80E.14 provides an exclusive mechanism by which a dealer may challenge a new dealership. Ford's reliance on this canon fails for two independent reasons.

First, the specific / general canon of statutory interpretation only applies where the two statutory provisions are in irreconcilable conflict:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. ***If the conflict between the two provisions be irreconcilable***, the special provision shall prevail and

3

shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Minn. Stat. § 645.26 (emphasis added). Here, there is no irreconcilable conflict or, indeed, any conflict whatsoever between Minn. Stat. § 80E.13 and Minn. Stat. § 80E.14. Both provisions prohibit manufacturers from taking certain action against dealers as being unlawful or unfair. As prior decisions interpreting the MVSDA demonstrate, there are instances in which a manufacturer's actions may implicate multiple or different provisions under the MVSDA. *See Shakopee Chevrolet Inc. v. General Motors LLC*, No. CV 20-2366 (JRT/LIB), 2021 WL 1785229, *4 (D. Minn. May 5, 2021); *see also* App. 264; R. Doc. 20-2, at 9 (*North Star Int'l Trucks, Inc. v. Navistar, Inc*., Court File No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan Burke) (June 30, 2010 Motion to Dismiss Oder)). That potential overlap does not create an irreconcilable conflict—nor has Ford identified one.[1]

_____

[1] Ford muses that "[i]t makes no sense that the Legislature would allow dealers like Anderson *more* power under the MVSDA to challenge dealerships that are farther away." Appellee Br. at 24. Ford's argument erroneously assumes that the geographic distance between two dealerships is the only metric by which to evaluate harm to a dealer. But Ford's actions here, stripping half of Anderson & Koch's territory and reallocating it to a new dealership to be constructed within Anderson & Koch's existing Dealer Locality creates the potential for just as much, if not greater, harm than a narrow assessment of miles between two points. The very existence of Sections 80E.13(p) and (k) confirm that the legislature chose to protect dealerships with the understanding that there are different ways in which manufacturers may attempt to use their unbridled leverage to harm dealerships. Indeed, the natural evolution of the MVSDA confirms this reality. Section 80E.14 was in the original

4

Ford's brief does not even appear to recognize that the existence of a statutory conflict is a prerequisite to the application of the specific / general canon. Ford's brief does not contain the word "conflict." *See generally* Appellee Br. Ford's brief does not cite to the canon's controlling statute, Minn. Stat. § 645.26. *See* Appellee Br. table of authorities.

Because Ford fails to show the requisite statutory conflict, its cases are inapposite. Ford cites *Connexus Energy v. Comm'r of Revenue*, 868 N.W.2d 234 (Minn. 2015) and *Koehnen v. Flagship Marine Co.*, 947 N.W.2d 455 (Minn. 2020). But those decisions merely applied the specific / general canon of interpretation to determine that a more specific provision controls over a conflicting general provision. In *Connexus*, for example, the "general-assessment provision" within the Minnesota tax code provided a 3 ½ year statute of limitations whereas the "erroneous-refund provision" provided only a two year statute of limitations. *Connexus*, 868 N.W.2d at 236. The provisions were in conflict—one provision barred the claim at issue and the other did not. *See also Koehnen*, 947 N.W.2d at 455 (declining to allow health care provider to assert cause of action under general language of Workers' Compensation Act when he failed to properly intervene under

---

version of the statute enacted in 1981. Section 80E.13(k) was later added in 1988, and Section 80E.13(p) was not enacted until 2018, both to provide additional protections to dealers beyond the limited relief afforded in Section 80E.14.

5

a more specific statutory provision). No statutory conflict arises when a manufacturer's actions implicate multiple provisions under the MVSDA.

A decision from the United States District Court for the Southern District of Alabama, *GPI-AL, Inc. v. Nissan North America, Inc.*, 2019 WL 5269101 (S.D. Ala. 2019), provides helpful guidance. There, under an analogous Motor Vehicle Franchise Act, the manufacturer argued (as Ford does here) that an add-point provision restricting the addition of new dealerships was the exclusive mechanism to challenge a proposed new dealership under the specific / general canon:

> NNA maintains that Count Three is legally barred because of what it terms the "specific/general doctrine." The argument is as follows: Alabama law provides that a specific statute controls a more general statute. . . . NNA characterizes § 8-20-4(3)(l) – the section of the MVFA at issue in Count One that forbids a motor vehicle manufacturer from unreasonably appointing a new dealer in the same market area served by an existing dealer – as a specific statute governing challenges to "open point" decisions. By contrast, NNA frames § 8-20-4(2) – the MVFA section at issue in Count Three that bars a manufacturer from acting unreasonably or in bad faith toward a franchise – as a general statute. Applying the "specific/general" canon of statutory construction, then, defendant reasons that "Section 8-20-4(3)(l) is the exclusive method of challenging the establishment of the proposed new dealership," such that Count Three must be dismissed.

*Id.* at \*10. The court expressly rejected that argument because the manufacturer could not identify any conflict or tension between the add point statute and the more general statute prohibiting unreasonable or bad faith actions by manufacturers against dealers: "[N]othing in the text of the MVFA suggests that the Alabama legislature intended to afford primacy to § 8-20-4(3)(l), much less to make that

6

subsection the sole method by which a dealer might challenge specific instances of allegedly unreasonable or arbitrary conduct by a manufacturer that relate in some way to an open point decision." *Id*. That same analysis applies here.

Second, even if the specific / general canon were to apply, Ford does not articulate how one provision is more specific than the other. Instead, Ford focuses on the fact that Section 80E.13 and Section 80E.14 provide different "procedural and substantive requirements." Appellee Br. at 23. But the fact that the provisions have different requirements does not make one provision more specific than the other. Rather, when considering the nature of the Proposed Change, Sections 80E.13(k) and (p) are ***more specific*** than Section 80E.14 because they directly address the specific conduct at issue. Namely, Anderson & Koch is challenging the removal of half of its census tracts and the re-assignment of those tracts to a new dealership within Anderson & Koch's existing Locality. Unlike Section 80E.14, Section 80E.13(k) directly addresses "***modify[ing] . . . a franchise with a succeeding franchise*** . . . ." Minn. Stat. § 80E.13(k). And also unlike Section 80E.14, Section 80E.13(p) addresses "***assign[ing] or chang[ing] a dealer's area of sales effectiveness*** arbitrarily or without due regard to the present pattern of motor vehicles sales and registrations with the dealer's market." Minn. Stat. § 80E.13(p). The Proposed Change is the specific type of conduct prohibited by these provisions of the MVSDA.

7

In short, this canon of interpretation does not apply because there is no irreconcilable conflict between the relevant MVSDA provisions. And even if it did apply, it would not support Ford's desired interpretation.

## B. Ford's out-of-state decisions are inapposite

Ford's only other argument in support of exclusivity is that the district court's opinion "aligns with other state courts addressing the precise issue here." Appellee Br. at 25. This argument is also without merit. None of Ford's out-of-state decisions support the district court's decision.[2] In fact, all five decisions cited by Ford (*Parktown, American Honda, JJM Sunrise, Luxury Autos of Huntington,* and *Don Simmons*) are distinguishable on two key grounds.[3]

---

[2] Ford's observation that Anderson & Koch has not cited a single case holding that a party may block a new dealership under Section 80E.13 is unremarkable. It is an issue of first impression. Nonetheless, the cases cited by Anderson & Koch (namely, *Navistar, Inc.* and *Shakopee Chevrolet, Inc.*) recognized that the MVSDA contains independent prohibitions, the violations of which can be independently alleged regardless of the applicability of another provision.

Ford's claim that *Navistar, Inc.* actually supports the district court's reasoning is based on Ford's attempt to improperly narrow *Navistar, Inc.*'s analysis of Minn. Stat. § 80E.13(k) to only a consideration of the manufacturer's removal of census tracts. *See* Appellee Br. at 27-28. But the claim upheld in that case was expressly related to the removal *and reassignment* of census tracts to a new dealership, which is precisely at issue here. (*See* App. 296-297; R. Doc. 20-3, at 10-11 (Sept. 29, 2010 Summary Judgment Order).)

[3] Ford apparently abandoned its reliance on *Bob Dunn Jaguar, Inc. v. Ford Motor Co.*, upon which it previously relied (App. 133; R. Doc. 15, at 8), a decision that actually **supports** Anderson & Koch's position. There, after the Commissioner of the North Carolina Division of Motor Vehicles determined that the dealer had no right to challenge the establishment of a new dealership under Subsection 5 of North

8

First, Ford's cases interpreted materially different statutory schemes than the MVSDA. None of the cases cited by Ford involved statutory provisions with terms like Section 80E.13(p) and (k), which preclude Ford from (1) modifying Anderson & Koch's franchise with a succeeding franchise to the extent it adversely affects Anderson & Koch's sales or service obligations or investments or (2) assigning or changing Anderson & Koch's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicles sales and registrations. Rather, in each of Ford's cases, the dealer relied upon general statutory prohibitions against "capricious," "bad faith," or "unconscionable" conduct and was seeking to enjoin a dealership based on these more general prohibitions.

By way of example, in *Parkview*, the court held that Section 407.825(1) of Missouri's Motor Vehicle Franchise Practices Act creates only a general cause of action against a manufacturer for conduct that is "capricious, in bad faith, or unconscionable" and that a separate statute, Section 407.817, "is the sole and exclusive authority for challenging the establishment of a new motor vehicle dealership" because it is the "only section" that addresses the rights and obligations

---

Carolina's applicable law (which prohibited the establishment of a new dealership within a specific geographic radius similar to Minn. Stat. § 80E.14) because it was outside the dealer's relevant market area, it expressly determined that the dealer did have an independent right to contest the intended change to its dealer territory in favor of the new dealership under Subsection 38 (which prohibited certain changes to a dealer's area of responsibility similar to Minn. Stat. § 80E.13(p)). (App. 146-154; Doc. 16, at 9-17.)

9

with respect to adding new dealerships. *Parktown Imp., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672-73 (Mo. 2009). Likewise, in *American Honda*, the Massachusetts statute under which the dealer brought its claim prohibited "any action which is arbitrary, in bad faith, or unconscionable." *Am. Honda Motor Co., Inc. v. Bernardi's, Inc.*, 735 N.E.2d 348, 355 (Mass. 2000). The statute did "not proscribe a particular act or practice, but rather is more general in scope." *Id*.

Here, the opposite is true. Anderson & Koch is relying on ***specific*** statutes designed to guard against ***specific*** actions—namely, unfair modifications to a franchise and Dealer's Locality.

Second, in each of Ford's cases, the dealer only challenged the manufacturer's establishment of a new dealership. The manufacturer was not attempting to remove and reassign the dealer's relevant territory to a new dealership ***within the dealer's existing territory***. By way of example, in *Parkview*, the manufacturer did not attempt to remove and reassign any portion of the dealer's territory (let alone half of its territory as here) to a new dealership within the dealer's existing territory. The ***only*** conduct at issue was the establishment of a new dealership outside of the dealer's existing territory. Notably, the court held that "[a]llowing Parktown to bring a claim under § 417.825(1), ***solely on the basis of Audi establishing a new motor vehicle dealership***, would abrogate policy decisions made by the legislature in enacting § 407.817." *Parktown Imp., Inc.*, 278 S.W.3d at 673-74 (emphasis added). Likewise,

10

in *American Honda*, the dealer was only challenging the manufacturer's establishment of a new dealership outside of its assigned territory. *Am. Honda Motor Co., Inc.*, 735 N.E.2d at 349. The manufacturer was not attempting to remove and reassign the dealer's relevant territory to a new dealership within the dealer's existing territory. *Id*.

Of course, the conduct at issue here goes beyond Ford merely establishing a new dealership. It involves Ford's decision to remove and reallocate half of Anderson & Koch's census tracts to a new dealership within Anderson & Koch's existing Locality. Ford's out-of-state decisions are inapposite.

## II. FORD MISREADS THE COMPLAINT TO ARGUE THAT ANDERSON & KOCH HAS NOT STATED A CLAIM FOR RELIEF

This Court should also reverse the district court's decision because Anderson & Koch has stated a claim for relief against the Proposed New Dealership. The establishment of the Proposed New Dealership within Anderson & Koch's existing Dealer's Locality constitutes a change to the Locality under Minn. Stat. § 80E.13(p) and a change to its franchise under Minn. Stat. § 80E.13(k).

### A. Ford's establishment of a new dealership within the existing Locality is a change to the Locality under Minn. Stat. § 80E.13(p)

In arguing that this Court should affirm the district court's decision that Anderson & Koch did not plausibly allege a violation of Minn. Stat. § 80E.13(p), Ford does not dispute that under the MVSDA: (i) Anderson & Koch's Dealer's

11

Locality is the geographic territory that is specifically assigned to Anderson & Koch in which it is responsible for selling and servicing Ford vehicles; and (ii) Ford is prohibited from changing the Dealer's Locality arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the market. Instead, Ford argues that Anderson & Koch did not plead a "modification of a Dealer's Locality" but rather only "alleges that Ford assigned certain census tracts to Anderson in writing, and then announced it would change those census tracts going forward." Appellee Br. at 18. Ford's argument relies upon a misreading of the Complaint.

Anderson & Koch's Complaint alleges that by issuing the Notice of Proposed Change, Ford advised of its intent to substantively modify Anderson & Koch's Dealer's Locality by *both* removing census tracts *and* assigning them to a new dealership to be *constructed inside the existing Dealer's Locality*. (App. 24; R. Doc. 1-1, at 17 ("Ford's proposal to remove and reallocate half of the census tracts within Anderson & Koch's Dealer's Locality to approve the Proposed New Dealership within Anderson & Koch's current Dealer's Locality separately violates the express terms of Minn. Stat. § 80E.13(p) and is therefore unlawful.").) Ford's brief, like the district court's decision, merely assumes, without support or analysis, that the establishment of a new dealership *within* Anderson & Koch's existing Dealer's

Locality does not constitute a change to the Locality. That assumption is flawed and unsupported.

Ford's only stated basis for this critical assumption is that "the Agreement contemplates that multiple dealerships can share a Dealer's Locality." Appellee Br. at 18. But the fact that the Dealer Agreement allows Ford to appoint multiple dealers within a Dealer's Locality does not mean that Ford's decision to appoint a new dealership within an existing Dealer's Locality does not constitute a modification to that Locality. Stated differently, the existence of the contractual right does not avoid the modification that results from exercising that right. Indeed, the district court expressly determined that, notwithstanding Ford's broad rights under the Dealer Agreement, any modification to Anderson & Koch's Dealer's Locality would necessarily constitute a modification to the "franchise"—i.e., the Dealer Agreement. (Add. 6; App. 359; R. Doc. 33, at 6.)

This unavoidable fact compels reversal: By constructing a new dealership inside Anderson & Koch's existing Dealer's Locality—an act that would necessarily require the new dealership to occupy a portion of the geographic territory specifically assigned to Anderson & Koch—Ford has proposed a modification to Anderson & Koch's Dealer's Locality. Neither Ford nor the district court have explained how the result could be otherwise. Accordingly, Anderson & Koch has stated a plausible claim for violation of Minn. Stat. § 80E.13(p).

13

**B.     Ford's decision modifies the franchise under Minn. Stat. § 80E.13(k)**

The parties agree that the MVSDA prohibits a manufacturer from modifying or replacing a "franchise" with a succeeding franchise that would "adversely alter the rights or obligations" or "substantially impair[] the sales or service obligations or investments of the dealer." Minn. Stat. § 80E.13(k). The parties likewise agree that a "franchise" is defined as the "written agreement" with the manufacturer. Minn. Stat. § 80E.03(8). Consistent with the district court's decision, Ford's only rejoinder to Anderson & Koch's argument that it has plausibly stated a claim under Section 80E.13(k) is to assert that Ford's decision to approve a new dealership does not itself require "modifying a single word" of the parties' Dealer Agreement. Appellee Br. at 16-17.

But Ford's argument entirely (and conspicuously) ignores Section 1(j) of the Dealer Agreement, which defines Anderson & Koch's Dealer's Locality as the "locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility for COMPANY PRODUCTS." (App. 34; R. Doc. 1-1, at 27 § 1(j).) By tendering to Anderson & Koch the Notice of Proposed Change (which, again, advised of Ford's intent to reassign half of Anderson & Koch's census tracts to a new dealership within the boundaries of Anderson & Koch's existing Dealer's Locality), Ford effectuated a change to Anderson & Koch's "franchise" by modifying its Dealer's Locality as

14

provided in Section 1(j) of the Dealer Agreement.[4] As a result, Anderson & Koch has alleged a plausible claim for violation of Minn. Stat. § 80E.13(k).

Indeed, the district court acknowledged that a change to a Dealer's Locality would constitute a change to the franchise. (Add. 6; App. 359; R. Doc. 33, at 6.) As noted, constructing a dealership inside a Dealer's Locality changes the Locality by occupying a portion of the same geographic territory that Anderson & Koch was specifically charged with servicing. Ford's refrain that the Dealer Agreement authorizes Ford to appoint multiple dealers within a Dealer's Locality is of no moment. Again, Ford's general right to appoint a new dealership within a Locality does not mean that doing so does not effectuate a change to the Locality.

Ford's argument that Anderson & Koch "conflates the Dealer's Locality and new-dealership decisions" is without merit and misses the point. Appellee Br. at 16. Irrespective of whether there were two "distinct acts," they are part of the same Proposed Change. As detailed in Anderson & Koch's Complaint, and conceded by Ford throughout this litigation, the Notice of Proposed Change was tendered to Anderson & Koch for the purpose of removing and reassigning census tracts to the

---

[4] Anderson & Koch's counsel did not concede that "nothing expressly is being modified or changed" in the "franchise," as claimed by Ford. Appellee Br. at 16. Those are words taken from statements made by the district court. Anderson & Koch's counsel argued the opposite at the motion to dismiss hearing—namely, that "inserting an add point in the existing area of sales effectiveness *is* a change to the franchise" for the same reasons detailed in Appellant's Brief. (App. 397; R. Doc. 48, at 10 (emphasis added).)

15

Proposed New Dealership. (App. 16; R. Doc. 1-1, at 9.) Those two acts are inextricably intertwined and part of the same scheme to dramatically modify Anderson & Koch's franchise in violation of Section 80E.13(k).

Contrary to the arguments that Ford now advances in its Appellee's Brief, Ford readily acknowledged in its motion to dismiss that the Notice of Proposed Change was intended to reassign Anderson & Koch's census tracts to a new to-be constructed dealership.[5] In Ford's own words: "**on December 2, 2022, Plaintiff received written notice from Ford of its intent to changes its 'Dealer Locality' _by reallocating census tracts to the New Dealership_, which will be located approximately 17.5 miles from Plaintiff's current location.**" (App. 127; R. Doc. 15, at 2 (emphasis added).) Ford's appeal arguments are entirely inconsistent with its prior concessions.

## CONCLUSION

Anderson & Koch respectfully requests that this Court reverse the district court's November 30, 2023 Order because it fails to correctly apply the MVSDA. This Court should, therefore, hold that Anderson & Koch has plausibly alleged

---

[5] Ford claims that Anderson & Koch "only deduced that Ford approved a new dealership through a review of Forest Lake municipal records." Appellee Br. at 16. But the manner in which Anderson & Koch first learned of the Proposed Change is decidedly irrelevant. The Complaint plausibly alleges—and in fact Ford concedes— that it intends to remove half of Anderson & Koch's census tracts and reassign them to a new dealership to be constructed within Anderson & Koch's existing Dealer's Locality.

16

violations of Minn. Stat. § 80E.13(p) and Minn. Stat. § 80E.13(k), including as it relates to the Proposed New Dealership.

Dated: June 6, 2024        Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

By: s/ *Jordan L. Weber*

    Aaron G. Thomas    (#0389011)
    Jordan L. Weber    (#0396769)
    Yuka Shiotani    (#0401989)
    Scott M. Flaherty    (#0388354)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile:  (612) 977-8650
Emails:    athomas@taftlaw.com
        jweber@taftlaw.com
        yshiotani@taftlaw.com
        sflaherty@taftlaw.com

**ATTORNEYS FOR APPELLANT**
**ANDERSON & KOCH FORD, INC.**

17

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Defendant-Appellant certifies that this brief complies with the requirements of Fed. R. App. P. 32(a) in that it is printed in 14 point, proportionately spaced typeface utilizing Microsoft Word 2016 and contains 4,145 words, including headings, footnotes and quotations and that the brief has been scanned for viruses and is virus-free.

Dated:  June 6, 2024

**TAFT STETTINIUS & HOLLISTER LLP**

By: s/ *Jordan L. Weber*

    Aaron G. Thomas    (#0389011)
    Jordan L. Weber    (#0396769)
    Yuka Shiotani    (#0401989)
    Scott M. Flaherty    (#0388354)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile:  (612) 977-8650
Emails:    athomas@taftlaw.com
        jweber@taftlaw.com
        yshiotani@taftlaw.com
        sflaherty@taftlaw.com

**ATTORNEYS FOR APPELLANT
ANDERSON & KOCH FORD, INC.**

133232418v5

18